BIOGEN, INC.

v.

AMGEN, INC.

Civil Action No. 95–10496–RGS.

United States District Court,
D. Massachusetts.

Jan. 19, 1996.

David E. Lurie, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, James F. Haley, Kenneth B. Herman, Andrew S. Marks, Madge R. Kanter, Fish & Neave, New York City, for plaintiff.

Allan van Gestel, Goodwin, Proctor & Hoar, Boston, MA, Karen J. Kramer, Lloyd R. Day, Jr., David M. Madrid, Robert M. Galvin, Ricardo Rodriguez, Cooley, Godward, Castro, Huddleson & Tatum, Palo Alto, CA, Steven M. Odre, Karol M. Pessin, Amgen, Inc., Thousand Oaks, CA, for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO DISMISS IN PART DEFENDANT'S COUNTERCLAIM

STEARNS, District Judge.

In this patent infringement case, the plaintiff, Biogen, Inc., alleges that the defendant Amgen, Inc., has infringed all claims of two of Biogen's patents (Patents 5,401,642 and 5,401,658), and claims 3, 7–9, 13, and 17 of a third patent (4,874,702).[1] Amgen by way of counterclaim seeks a declaratory judgment that the claims of the three patents are invalid and unenforceable, and thus not infringed upon. Before the court is Biogen's motion to dismiss the declaratory judgment action on claims 1, 2, 4–6, 10–12, 14–16, and 18 of the '702 patent. As to these claims Biogen asserts that there is no real case in controversy before the court.[2]

---

1. The '702 patent was issued on October 17, 1989, and, "on information and belief." Biogen alleges that the '642 and '658 patents were issued on March 28, 1995.

2. On October 27, 1995, Amgen filed a motion for summary judgment on nine of the claims embodied in the '702 patent. Amgen alleges that those claims were anticipated by a scholarly article published by G.T. Horn and R.D. Wells in *Federation Proceedings Abstracts*, Vol. 38, No. 3, 1979. The deadline for Biogen's reply brief was November 13, 1995. On November 9, 1995, Biogen filed an emergency motion to extend the time for a reply. Biogen pointed out that several of the claims on which Amgen sought summary judg-

ment were subjects of this pending motion to dismiss. Biogen also asserted that it needed limited discovery to adequately prepare an opposition. Specifically, Biogen sought documents related to the Horn and Wells paper and the scholarly works it referred to, as well as any Amgen documents relating to the '702 patent. At the November 30, 1995 hearing, Biogen's motion for an extension was *ALLOWED*. The parties have since informed the court that they are working towards establishing a mutually agreeable discovery schedule, and that all outstanding issues relating to the motion for summary judgment will be resolved at the January 31, 1996 scheduling conference.

*THE NATURE OF THE PATENTS*

The three patents owned by Biogen involve methods of inducing the production of human proteins in non-human "host" cells through the use of recombinant DNA. Claims 1–8, 12–16, and 18 (of which Biogen has claimed infringement of claims 3, 7, 8, and 13) of the '702 patent concern "empty vectors." Claims 9–11 and 17 of the '702 patent, and all of the claims under the '642 and '658 patents concern "filled vectors."

█ A vector is a DNA molecule that is capable of reproducing itself in a host cell. The empty vector claims involve molecules which are receptive to the insertion of a selected piece of DNA, while the filled vector claims involve molecules into which the selected DNA has already been successfully inserted. Because only filled vectors enable DNA to produce specifically designated proteins (that is, proteins encoded in a selected strand of DNA), the filled vector claims are at the heart of this law suit.[3]

Amgen uses the allegedly infringing filled vector technique to make the drug Neupogen, which is intended to increase the white blood cell count of cancer patients undergoing chemotherapy treatments. Neupogen has been sold since 1991, and has generated revenues for Amgen in excess of 2 billion dollars.

*LEGAL STANDARDS*

█ By the authority of the Declaratory Judgment Act, 28 U.S.C. § 2201(a)

[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought....

The Act was designed to prevent "the sad and saddening scenario" whereby a party repeatedly asserts a claim of right against another party without ever actually filing suit. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 (Fed.Cir.

1988). "In the patent version of that scenario ... [g]uerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics...." *Id.* at 734–735. The Declaratory Judgment Act provides redress to victims of such tactics by forcing the patent holder to either prove its claim in court or permanently desist from threatening suit.

█ When a patent consists of a single claim, the import of a declaratory judgment action is clear—it is, quite literally, an all or nothing proposition. Similarly, when the holder of a patent with multiple claims alleges that a product infringes only certain claims of its patent, the entire patent may be said to be in dispute if a resolution of the claims in controversy will still leave the defendant in doubt as to whether it is manufacturing an infringing product. See *Flakice Corp. v. Liquid Freeze Corp.*, 131 F.Supp. 599, 600–601 (N.D.Cal.1955). However, because a federal court's power to resolve disputes is limited to actual controversies, *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631 (Fed.Cir.1991), the *Flakice* analysis is only applicable to patent cases when an adjudication of the claims pressed by the plaintiff *necessitates* a resolution of nonasserted patent claims. When this is *not* the case, the party seeking a declaratory judgment "has the burden of establishing by a preponderance of the evidence ... that it has a reasonable apprehension that it will be sued" on the nonasserted claims. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir.1992); *Grain Processing Corp. v. American Maize–Products Co.*, 840 F.2d 902, 905–906 (Fed.Cir.1988).

█ The Federal Circuit has established a two part test to determine if a party is in reasonable apprehension of being sued by a patent holder on a particular claim:

[t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present

---

**3.** So much so that Biogen has offered to drop all of its empty vector claims in exchange for Amgen's agreement to not seek a declaratory judg-

ment on any patent claims other than those which Biogen alleges Amgen has infringed.

activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. . . .

*BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). The test is an objective one. *Id.* When a dispute arises as to the justiciability of particular claims within a patent, the patent must be analyzed on a claim by claim basis, and a finding of jurisdiction over some claims does not necessarily entail justiciability of the others. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed.Cir.1984).

## DISCUSSION

■ The basic question raised by Biogen's motion to dismiss is whether an actual dispute exists as to claims 1, 2, 4–6, 10–12, 14–16, and 18 of the '702 patent. Biogen asserts that it does not, because Biogen does not now allege, and promises never to allege in the future, that Amgen has infringed any of these claims. For its part, Amgen argues that all of the claims of the '702 patent are subject to the court's jurisdiction for three reasons: (1) Biogen's improper conduct has placed the entire '702 patent at issue; (2) the patent claims are so closely related that they all form part of the same case in controversy; and (3) Biogen's actions have placed Amgen in reasonable fear that it may be sued for infringing any or all of the above mentioned claims.

Amgen's most appealing argument is that "[b]ecause inequitable conduct requires an examination of the entire patent and results in the unenforceability of the entire patent, [all of the nonasserted claims] are part of the existing case or controversy between Biogen and Amgen as a matter of law." Memorandum in Opposition, at 10. In other words, Amgen claims that Biogen is cognizant of the fact that it behaved improperly in obtaining and seeking to enforce certain of the '702 patent claims, and as a result is seeking to weasel out of litigation that might place its entire patent in jeopardy. A finding of nonjurisdiction over the counterclaim does not, however, preclude Amgen from contesting

the enforceability of the '702 patent. See *Scripps Clinic and Research Foundation v. Genentech Inc.*, 707 F.Supp. 1547, 1557 n. 15 (N.D.Cal.1989), rev'd on other grounds, 927 F.2d 1565 (Fed.Cir.1991) ("[A] determination that inequitable conduct has occurred renders the 'entire patent' unenforceable. However, . . . the Court has jurisdiction only over those claims with respect to which infringement is alleged.") Moreover, so long as Amgen is permitted to fairly explore the issue in discovery, its prospects of succeeding on an inequitable conduct claim are not prejudiced by the jurisdictional parameters of the case.

Amgen notes the seeming illogic of allowing discovery on the nonasserted claims while simultaneously declining jurisdiction over the counterclaim. While there is an understandable temptation to cast a wide jurisdictional net in the interests of efficiency, the better rule limits the court's jurisdiction to those claims that actually form the basis of a genuine dispute. See *Arrowhead*, 846 F.2d at 735 (noting that the tension between the Declaratory Judgment Act and the general prohibition against advisory opinions gives rise to "competing considerations . . . of constitutional dimensions.") Cf. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1936) (distinguishing a "justiciable controversy . . . from a difference or dispute of a hypothetical or abstract character.") The reason that a conservative approach to jurisdiction is not unfair lies in the significant difference between a claim of unenforceability and a claim of invalidity. An inequitable conduct defense is directed to the former, and is not dependent on the ability to litigate the latter.[4]

■ Amgen next argues that because all of the patent claims are closely related, Biogen, by pressing some, has placed them all "in play." The notion that a plaintiff's choice to litigate certain patent claims and not others constitutes assent to jurisdiction over the entire patent has been specifically rejected by the Federal Circuit. In *Webb*, 742 F.2d 1388, a leading case, the plaintiff asserted selected claims of its patent against the de-

---

4. See *Webb*, 742 F.2d at 1400 n. 8, noting that "when the proof at trial establishes . . . fraud," a court declining declaratory judgment jurisdiction over nonasserted claims may nonetheless enter "a declaratory judgment that all claims are invalid."

fendant. As here, the defendant counterclaimed for a declaratory judgment of invalidity as to the asserted claims and also as to several nonasserted claims. In *Webb*, the district court held that the nonasserted claims were invalid. The Federal Circuit reversed, holding that the defendant had failed to establish the existence of a case or controversy with respect to those claims.

■ Amgen argues that, at a minimum, claims 1 and 2 of the '702 patent must be considered part of the existing case or controversy because asserted claims depend from them. See Memorandum in Opposition, at 10.[5] In other words, Amgen contends that since nonasserted claims 1 and 2 of the patent must be addressed in order to resolve asserted claim 9, the court must exert jurisdiction over the former to exercise full jurisdiction over the latter. Despite its logical appeal, Amgen's argument is untenable in light of 35 U.S.C. § 282, which states that "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims. . . ." Thus, while in *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573 (Fed. Cir.1993), the Federal Circuit acknowledged that to prove infringement of an asserted, dependent claim, a plaintiff must also demonstrate infringement of the nonasserted independent claim from which it depends, it nonetheless vacated the judgment of the district court because the independent claims were not asserted by the patentee and were not a part of the case in controversy. *Id.* at 1581 n. 8. While Amgen correctly quotes *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989), as saying that "dependent claims cannot be found in-

fringed unless the claims from which they depend have been found to have been infringed . . .," this principle does not expand the court's declaratory judgment jurisdiction. As the *Webb* court explained, "[a] judgment, such as the one in the instant case, that adjudicated less than all of a patentee's claims may operate as collateral estoppel under certain circumstances to prevent that patentee from later charging the alleged infringer or a third party with infringement of the nonasserted claims." *Webb*, 742 F.2d at 1399. In this way, an alleged infringer need not inject every claim of a patent into the case in order to protect itself from repetitive law suits.[6]

Amgen finally argues that the broad allegations of infringement levelled by Biogen in the original Complaint are sufficient to cause it reasonable apprehension that it is a target for suit with respect to all of the claims in the '702 patent. In response, Biogen points to its repeated promises to abstain from ever suing on the nonasserted claims.[7] Biogen's initial assurance that it "[did] not intend to assert" any additional claims of the '702 patent against Amgen was correctly perceived by Amgen as falling short of an unconditional promise to forgo future law suits. See Memorandum in Support, at 7. However, in its July 24, 1995 reply brief, Biogen made the following representation:

> In an effort to resolve this jurisdictional dispute and to reduce the issues for trial, Biogen has offered to limit its assertion of the '702 patent to claims 9 and 17—the filled vector claims. At the same time, Biogen has offered to stipulate that it will not sue Amgen on any of the remaining '702 patent claims (i.e., claims 1–8, 10–

---

5. Amgen similarly argues for jurisdiction over claim 12, from which claim 13 depends, but in light of Biogen's forbearance from suit on claim 13, the argument is no longer viable.

6. Amgen's argument that the *Webb* court "found a case or controversy as to [independent claims 4 and 8] . . . because claim 9, which the plaintiff had originally asserted against the defendant, was dependent on claims 4 and 8" is based on a misreading of the opinion. See Amgen's Memorandum in Opposition at 7. The *Webb* court exerted jurisdiction over claims 4 and 8 not because of their relationship to an asserted

claim, but because the plaintiffs "actually litigated [them] without objection" at trial. *Webb*, 742 F.2d at 1399 n. 7.

7. Amgen insists that it will accept only a stipulation that the nonasserted claims have not been infringed. Biogen correctly points out that such a stipulation would prevent it from litigating those asserted claims which depend from the nonasserted claims. See *Wahpeton Canvas*, 870 F.2d at 1553 n. 9. ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all of the limitations of) that claim.")

16 and 18) against any product currently manufactured and sold by Amgen (Haley Decl., Exh. A).

This offer, if accepted, would limit the scope of discovery and trial because no "empty vector" claims would be at issue.

Reply Memorandum, at 17–18 (footnote omitted).

This offer the court perceives as a binding undertaking that addresses Amgen's concerns. Amgen resists this declaration with the assertion that the temporal focus of the reasonable apprehension of suit analysis is ordinarily fixed on the day the Complaint is brought. See *Arrowhead*, 846 F.2d at 736. Amgen has failed, however, to cite any authority for the proposition that once the test has been met, the court must retain declaratory judgment jurisdiction even if the apprehension of suit subsequently evaporates. Logic, as well as the law, dictates that " 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Webb*, 742 F.2d at 1398 n. 6, quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). See also *Grain Processing Corp.*, 840 F.2d at 906. Thus, in light of Biogen's latest representation that it will relinquish forever the right to sue Amgen on any claims other than 9 and 17 of the '702 patent, Amgen's counterclaim will be dismissed. See *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed.Cir.1995) ("The legal effect of [a plaintiff's] promise not to sue ... [is that] although [the defendant] may have cause to fear an infringement suit under the ... patent based on products that it may develop in the future, [it] has no cause for concern that it can be held liable for any infringing acts involving products that it made, sold, or used on or before ... the day [the plaintiff] filed its motion to dismiss for lack of an actual controversy.")

## ORDER

For the forgoing reasons, Biogen's motion to dismiss in part Amgen's counterclaim is *ALLOWED*. The court will exert jurisdiction only over claims 9 and 12 of the '702 patent. All claims and counterclaims relat-ing to any other claims of the '702 patent are *DISMISSED*.

SO ORDERED.