EVANS MEDICAL LTD., Medeva plc, SmithKline Beecham Biologicals S.A., SmithKline Beecham Biologicals Manufacturing S.A. and SmithKline Beecham Corporation, Plaintiffs,

v.

AMERICAN CYANAMID COMPANY, Takeda Chemical Industries, Ltd. and American Home Products Corporation, Defendants.

AMERICAN CYANAMID COMPANY, Takeda Chemical Industries, Ltd. and American Home Products Corporation, Counterclaim Plaintiffs,

v.

EVANS MEDICAL LTD., Medeva plc, Glaxo Wellcome plc, Glaxo Wellcome Inc., SmithKline Beecham Biologicals S.A., SmithKline Beecham Biologicals Manufacturing S.A. and SmithKline Beecham Corporation, Counterclaim Defendants.

No. 96 Civ. 3529(WCC).

United States District Court, S.D. New York.

Nov. 21, 1997.

---

Kenyon & Kenyon, New York City, NY (Paul H. Heller, George E. Badenoch, Richard S. Gresalfi, Estelle J. Tsevdos, of counsel), for Defendants and Counterclaim Plaintiffs.

Cahill Gordon & Reindel (a partnership including a professional corporation) New York City, NY (Thomas F. Curnin, James E. Rosenfeld, of counsel), for Counterclaim Defendants Glaxo Wellcome plc and Glaxo Wellcome Inc.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Evans Medical Ltd. ("Evans"), Medeva plc ("Medeva"), and SmithKline Beecham Biologicals S.A., SmithKline Beecham Biologicals Manufacturing S.A. and SmithKline Beecham Corporation (collectively, "SmithKline"), brought suit against defendants American Cyanamid Company ("Cyanamid"), Takeda Chemical Industries, Ltd.

("Takeda") and American Home Products Corporation ("AHP") in February 1995, for alleged infringement of three patents (United States Patents 5,273,052, 5,438,120 and 5,648,080) in the "Human Vaccine Field." Defendants bring counterclaims against Evans, Medeva, SmithKline, Glaxo Wellcome Inc. ("GWI") and Glaxo Wellcome plc ("GWP"), (together, "Glaxo"),[1] pursuant to FED.R.CIV.P. 13 and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., alleging that the patents at issue are invalid, unenforceable and not infringed. Glaxo now moves to dismiss the counterclaims pursuant to FED.R.CIV.P. 12(b)(1), on the grounds that this Court lacks subject matter jurisdiction under the Declaratory Judgment Act.

For the following reasons, Glaxo's motion is granted.

## BACKGROUND

The patents at issue in this action relate to a pertussis antigen for use in vaccines to immunize children against whooping cough. In 1991, Evans secured from TWF the rights to the use of the antigen in the human vaccine field. In 1994, TWF expressly assigned to Evans the series of applications which resulted in issuance of the three patents in suit. At the same time, Evans granted back to TWF an "exclusive license to use and exercise the Patent Rights outside the Human Vaccine Field." Subsequently, Evans exclusively licensed to SmithKline the right to make, use and sell for use in humans vaccines containing the antigen covered by the '052, '120 and '080 Patents.

On February 2, 1995, plaintiff Evans sued defendants Cyanamid and Takeda in the United States District Court for the Northern District of Texas for alleged infringement of the '052 Patent. On March 26, 1996, the court transferred the case to the Southern District of New York, on the grounds that it lacked personal jurisdiction over Takeda. On September 17, 1996, Evans filed a second amended complaint, adding Medeva as plaintiff and asserting a claim for infringe-

---

1. In answer to the second amended complaint, defendants asserted counterclaims against The Wellcome Foundation Ltd. ("TWF"), but later amended their answer and counterclaims to name GWP, after learning that GWP had become the ultimate parent of the Wellcome Companies.

ment of the '120 Patent. On June 18, 1997, Evans and Medeva filed a third amended complaint, adding SmithKline as plaintiff and AHP as defendant. On August 14, 1997, plaintiffs filed a fourth amended complaint, asserting a claim for infringement of the '080 Patent.

In their answer to the amended complaint, defendants asserted counterclaims against plaintiffs, TWF and ultimately, Glaxo,[2] alleging that the patents are invalid and unenforceable.

## DISCUSSION

### I. Motion to Dismiss and Declaratory Judgment Standards

In considering Glaxo's motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true the facts alleged by defendants and draws all inferences in their favor. See Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir.1995). Defendants, however, bear the burden of showing that the Court has jurisdiction. Int'l Medical Prosthetics Research Assoc. v. Gore Enterprise, 787 F.2d 572, 575 (Fed.Cir. 1986). The nature of this obligation varies in accordance with the procedural posture of the litigation. Prior to discovery, a party may defeat a motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction, without having to state facts that "if credited by [the ultimate trier of fact], would suffice to establish jurisdiction." Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990). Accord Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir.1996). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidentiary matters outside the pleadings, such as affidavits and exhibits. Indium Corp. of America v. Semi–Alloys, Inc., 781 F.2d 879, 884 (Fed.Cir.1985). See also Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc., No. 95 Civ. 8833, 1996 WL 71492, at *5 (S.D.N.Y. Feb.20, 1996) (relying on pleadings, affidavits, and correspondence).

The purpose of the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., is to protect a threatened party from the uncertainty of impending litigation. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed.Cir. 1992). If the threat is immediate and real, and all other jurisdictional requirements are met, a court may hear a case for declaratory judgment, in order to determine the rights of an interested party. See, e.g., EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed.Cir. 1996), cert. denied, —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). According to section 2201(a):

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights ... of any interested party seeking such declaration....

28 U.S.C. § 2201(a). A declaratory judgment action therefore is not justiciable if it does not present a case or controversy. Shell Oil, 970 F.2d at 887. "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged ... show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" EMC Corp., 89 F.3d at 810 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Even where there exists jurisdiction, "the exercise of that jurisdiction [by a district court] is discretionary." Spectronics v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir.1991). To maintain jurisdiction, a case or controversy must be present at all stages of review. Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996).

### II. Declaratory Judgments Involving Patent Rights

In a case involving patent rights, a case or controversy arises where there is (1) "an explicit threat or other action" creating "a reasonable apprehension on the part of

2. See supra note 1.

the declaratory plaintiff that it will face an infringement suit," and (2) "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir. 1993). *Accord EMC Corp.*, 89 F.3d at 811. The case or controversy requirement "precludes a declaration regarding the validity or enforceability of claims unless the defendant objectively has a reasonable apprehension that it is facing or will face claims of infringement regarding those [patent] claims." *Super Sack*, 57 F.3d at 1056 (alteration in original). Furthermore, the reasonable apprehension must be the product of the declaratory defendant's conduct; "a reasonable apprehension alone, if not inspired by the defendant's actions, does not give rise to an actual controversy." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1211 (7th Cir. 1980) (citing *Premo Pharmaceutical Laboratories, Inc. v. Pfizer Pharmaceuticals, Inc.*, 465 F.Supp. 1281, 1282 (S.D.N.Y.1979)).

### A. *Explicit Threat or Other Action by Defendants*

 Defendants have failed to state a case or controversy, conferring jurisdiction on this Court. First, they have failed to show that Glaxo's conduct created a reasonable apprehension that defendants would face the threat of an infringement suit if they were to continue their activities with respect to the patents at issue in this action. The law makes clear that an agreement by a declaratory defendant not to sue on any claim regarding the patents-in-suit "totally removes any current or future apprehension" by the declaratory plaintiff, thereby "eliminat[ing] any actual case or controversy." *Super Sack*, 57 F.3d at 1056. Such agreement need not be unconditional nor covenanted to divest the jurisdiction of the court. *See, e.g., id.* at 1059 (statement that client would not enforce patent against past and present products sufficient to divest jurisdiction; defendant need not have entered into written agreement nor waived rights in connection with future products); *Prudent Publishing Co., Inc. v. Myron Mfg. Corp.*, 722 F.Supp. 17, 22 (S.D.N.Y.1989) (affidavit regarding claims pending in lawsuit divested

jurisdiction). *See also Biogen, Inc. v. Amgen, Inc.*, 913 F.Supp. 35, 37, 39–40 (D.Mass. 1996) (offer to stipulate regarding only those claims presented at trial held sufficient); *Northern Telecom Inc. v. Wang Laboratories, Inc.*, 543 F.Supp. 1026, 1028 (D.Mass. 1982) (moving papers denying ownership and rights sufficient).

In this case, the first-prong of the *BP Chemicals* test has not been met. Glaxo has "steadfastly refused to assert infringement" of the claims at issue in this litigation, *Grain Processing Corp. v. American Maize–Products Co.*, 840 F.2d 902, 906 (Fed.Cir.1988), and through affidavits of company officers and statements by counsel, has denied ownership, and any other rights, to the '052, '120 and '080 Patents in the human vaccine field, and has promised to be bound by any judgment in this case. *E.g.*, Aff. of Thomas F. Curnin, dated 9/16/97, at Ex. 1, ¶¶ 6–9; Ex. 3, ¶¶ 5–7, 9–10; Ex. 4, ¶¶ 4–5, 7–8. These statements forever estop Glaxo from bringing claims against defendants regarding the issues in this litigation, and thereby have "remove[d] any controversy sufficiently actual to confer jurisdiction over this case," *Super Sack*, 57 F.3d at 1059. The fact that the parties could not agree on a "covenant not to sue" does not create "reasonable apprehension" on the part of defendants. *See id.* Finally, Glaxo's continued desire to avoid litigation, as expressed through multiple correspondence with defendants, *see* Aff. of Thomas F. Curnin, dated 10/31/97, at Ex. 1, ("Aff.2"), dispels any lingering concern over defendants's "apprehension." *See, e.g., Cygnus Therapeutics Systems v. ALZA Corp.*, 92 F.3d 1153, 1159 (Fed.Cir.1996).

The fact that other litigation has been brought against defendants and that Glaxo "broke off" negotiations in drafting the covenant does not alter our conclusion. Defendants are correct in noting that a "litigation-saturated" environment will sometimes result in finding reasonable apprehension as a matter of law. *See, e.g., Matthew Bender & Co., Inc. v. West Publishing Co.*, Nos. 94 Civ. 0589, 95 Civ. 4496, 1996 WL 223917, at *6 (S.D.N.Y. May 2, 1996); *Larami Corp. v. Amron*, No. 92 Civ. 7323, 1994 WL 369251, at *5 (July 13, 1994). For the most part, how-

ever, in the cases where which a reasonable apprehension was found, the declaratory defendants had previously brought suit against other parties to enforce their rights. *E.g., Matthew Bender,* 1996 WL 223917, at *6; *Larami,* 1994 WL 369251, at *5. Even in such cases, the threat of litigation has been viewed in light of the totality of the circumstances, and particularly, in view of the conduct of the declaratory defendant. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736–37 (Fed.Cir.1988); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987). *Cf. Nynex Corp. v. Reuben H. Donnelley Corp.,* 688 F.Supp. 128, 130 (S.D.N.Y.1988) (no reasonable apprehension where threats came only from third-party).

In this case, defendants have not demonstrated that Glaxo has threatened litigation against them. Defendants merely state that they "have already been sued by all of the parties with any rights in the patents *other than Glaxo,*" that Glaxo "has refused to provide a release ... under Glaxo's rights to the patents outside the 'Human Vaccine Field,'" and that Glaxo "broke off negotiations" over the release "without explanation." Defs.' Mem. of Law in Opp'n to Glaxo's Mot. to Dismiss at 8 (emphasis added).

In *Shell Oil,* the Court of Appeals for the Federal Circuit held that a patentee's statement that it intended to enforce a patent did not create reasonable apprehension of suit on the part of plaintiff. 970 F.2d at 889. In that case, Shell had approached Amoco "[r]ather than wait[ing] to be caught in a possibly infringing posture." *Id.* Shell then filed a declaratory judgment action against Amoco, and Amoco "defended its patent," in response to Shell's suit. *Id.* In concluding that Amoco had never threatened suit against Shell, the court reasoned that "even after the [negotiations] reached an impasse, Amoco might have never sued.... In fact, if Shell had never approached Amoco, Amoco might never had considered any action against Shell." *Id. See also Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053–54 (Fed.Cir.1995) (no threat of litigation, where plaintiffs brought suit against defendants, after defendants had requested certain data on which to base license proposal); *Bristol–Myers,* 1996 WL 71492, at *6 (suggesting that unilateral termination of negotiations is not always determinative).

In this case, *defendants,* not Glaxo, involved the parties in litigation, by filing a counterclaim. By agreeing to negotiate a "covenant not to sue," Glaxo merely responded to defendants' claims. Nor did Glaxo "suddenly" "break off" negotiations with defendants. Before ending negotiations, Glaxo expressed, and explained, its concerns over defendants' demands, while reiterating its desire to negotiate the covenant. In a letter to defendants' counsel, counsel for Glaxo wrote:

> Although we thought that all parties wanted to reach an agreement ... it was our experience that at every step in our negotiations ... [you] increased or changed [your] demands. In addition, at our client's direction, we recently requested a list of discovery requests. The list we received reached far beyond what we regard as reasonable. For these reasons we have begun to work on a motion to dismiss. I enclose our recent draft of the Covenant Not to Sue and [your colleague's] reply, so that you can see where we were in negotiations. We look forward to hearing your response.

Aff. 2, at Ex. 1. An expressed frustration with negotiations and a corresponding desire to bring a motion to dismiss litigation already brought does not constitute a threat under *BP Chemicals.* As was the case in *Shell Oil,* by negotiating, Glaxo was trying to avoid litigation that had already been generated by defendants.

### B. *Present or Planned Activity by Plaintiffs*

There is a second reason to dismiss this case for lack of subject matter jurisdiction. Defendants have not met their burden under the second-prong of the *BP Chemicals* test, because they have failed to show that they intend to engage in an activity which could constitute infringement.

According to the Court of Appeals for the Second Circuit, in order to meet

**138**

the test, a declaratory plaintiff must show that it is "either engaged in manufacturing, using or selling the invention, or that [it] has the immediate intention and ability to do so." *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89 (2d Cir.1963). Intention and ability are decided on a case-by-case basis, *e.g., Arrowhead*, 846 F.2d at 736; *Re–Alco Industries, Inc. v. National Center for Health Educ., Inc.*, 812 F.Supp. 387, 395 (S.D.N.Y.1993), but, in order to state a claim for "intention and ability," an "outline [of] preparations for production" of the potentially infringing activity should be set forth in the pleadings. *See Int'l Harvester*, 623 F.2d at 1215. *Accord Wembley*, 315 F.2d at 90. Only after such intention and ability have been properly alleged will a court consider evidence beyond the pleadings. *See, e.g., Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758 (Fed.Cir.1987) (discussing testimony, in addition to complaint and counterclaim); *Matthew Bender*, 1996 WL 223917, at *4, *8, *10 (considering affidavits, declarations, deposition testimony, and "other documentary evidence," in addition to supplemental complaint).

Defendants do not allege the intention or ability to produce a potentially infringing vaccine in any of their papers. While defendants assert that the vaccines "may be used," and "can be administered," in areas "specifically excluded" from their rights, defendants fail to plead or otherwise provide evidence of such uses, beyond an affidavit of a Dr. Black, who allegedly uses one of the vaccines outside the human vaccine field, *see* Defs.' Mem. of Law, Ex. C, and an excerpt from *Physicians Desk Reference,* which notes the vaccines are "not contraindicated" for one outside use, *see id.,* at Ex. B. Such evidence is clearly insufficient to carry defendants' burden, not to mention defendants' failure to allege these uses in their pleadings. In fact, the evidence entirely fails to support the allegations of defendants in their amended counterclaim, that Glaxo is "likely to assert the '052 patent, the '120 patent, and the '080 patent against [defendants] in the portions of the *human vaccine field* in which [Glaxo has] retained exclusive rights," (2d Am.Countercl.¶ 41) (emphasis added).

## CONCLUSION

Because defendants' allegations do not state a case or controversy with respect to Glaxo, we lack subject matter jurisdiction under the Declaratory Judgment Act to hear the counterclaims against Glaxo. Defendants' counterclaims against Glaxo are therefore dismissed.

SO ORDERED.