**Ava GRYGA, Plaintiff,**

v.

**Joel GANZMAN, the Public Administrator, and the City of New York Defendants.**

No. 97 Cv. 3929.

United States District Court, E.D. New York.

Jan. 12, 1998.

Kenneth Pryor, Levy, Phillips & Konigsberg, LLP, New York City, for Ava Gryga.

Bruce Rosenbaum, Assistant Corporation Counselor, New York City, for New York City.

Fabian G. Palomino, Brooklyn, NY, for Public Administrator.

Alan Serrins, Dienst & Serrins, New York City, for Joel Ganzman.

## ORDER

GLASSER, District Judge.

### BACKGROUND

Plaintiff, Ava Gryga, has been employed as a "community assistant" for the Public Administrator of King's County since 1993, in which position she performs clerical duties. Compl. ¶ 15. Her immediate supervisor was and continues to be defendant Joel Ganzman, the Deputy Public Administrator of Kings County. *Id.* at ¶¶ 14, 16.

Plaintiff claims that "[i]n or about June 1994, defendant Ganzman told plaintiff that he wanted to have sexual relations with her. Even though plaintiff clearly rejected defendant Ganzman's advances, defendant Ganzman, over approximately the next two years, from time to time repeated his desires to have sex with plaintiff." *Id.* at ¶ 20. He also "from time to time ... called plaintiff into his office closed the door, and implored [plaintiff] to kiss and hug him." *Id.* at ¶ 21. Furthermore, defendant subjected plaintiff to "repeated and improper sexual remarks and innuendo." *Id.* at ¶ 25. "For example, defendant Ganzman told plaintiff to wear her hair down and paint her nails red because he liked them that way." *Id.* at ¶ 26. Defendant "also made lewd and offensive comments to plaintiff about his own sex life and about plaintiff's body." *Id.* at ¶ 27. And, in the Spring of 1996, "Ganzman told plaintiff that if she had sexual relations with him he would see that she had special privileges at work." *Id.* at ¶ 28.

Plaintiff made it clear to Ganzman that his behavior was offensive to her. *Id.* at ¶ 23. In retaliation for plaintiff's rejection of his

'sexual advances, defendant Ganzman "subjected plaintiff to discriminatory treatment on the job, such as docking her pay, docking her vacation time, and other retaliatory acts." *Id.* at ¶ 24.

Plaintiff eventually "complained to Commissioner Samuel Plotkin of Public Administrator, about Ganzman's unlawful behavior." *Id.* at ¶ 29. The Public Administrator, however, did not conduct a proper·investigation of plaintiff's claims, *id.* at ¶ 30, and "at no time was defendant Ganzman subjected to reprimand or probation for his misconduct, nor was defendant Ganzman required to undergo training or education concerning appropriate conduct toward female employees." *Id.* at ¶ 31.

On September 17, 1996, plaintiff filed a complaint of sexual harassment with the City of New York Commission of Human Rights. That agency forwarded plaintiff's complaint to the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 5. The EEOC sent plaintiff a "Right to Sue" letter on May 1, 1997, and on July 8, 1997, plaintiff filed the present suit. *Id.* at ¶ 6.

Plaintiff has asserted the following causes of action against defendants: Quid pro quo sexual harassment in violation of Title VII of the Civil Rights Act; hostile work environment sexual harassment in violation of Title VII; unlawful retaliation in violation of Title VII; sexual harassment pursuant to New York Human Rights Law, Executive Law § 296 *et seq.;* infliction of extreme emotional distress; and sexual harassment in violation of the New York City Human Rights Law, New York City Administrative Code § 8–107.

Defendant City of New York (the "City") has brought the present motion for dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction and because the complaint fails to state a claim against the City of New York.[1] Defendant argues that the City of New York is not plaintiff's employer and thus cannot be held liable under Title VII. Furthermore, defendant claims that there are "no allegations of any kind directed to the City of New York, let alone allegations of discriminatory treatment by the City of New York or any of its employees." Def.'s Mem. of Law 1.

## DISCUSSION

### Motion to Dismiss/Summary Judgment

Given that all of the parties to the present motion have presented matters outside of the pleadings that the Court has not excluded from its consideration, the Court, in an exercise of its discretion, will treat the City's motion to dismiss as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] *See Bennett v. Morgan Stanley & Co.,* 1997 WL 749364 (S.D.N.Y. Dec.4, 1997); *Rabin v. United States Department of State,* 980 F.Supp. 116, 120 (E.D.N.Y.1997). Although Rule 12(b)(6) states that when a court converts a motion to dismiss into one for summary judgment "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56," this Court concludes that no further opportunity to submit relevant material is necessary. The moving defendant and the plaintiff have both included materials outside of the pleadings in their motion papers and there is no indication that either party would submit additional relevant materials. Since both parties have filed exhibits and affidavits, neither can complain that they lacked a reasonable opportunity to meet facts outside the pleadings. *See In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986) ("The dis-

---

1. Defendants Ganzman and Public Administrator of Kings County have submitted opposition papers in response to defendant City of New York's motion.

2. Had the motion been brought only under 12(b)(1), its conversion to a motion for summary judgment would be unnecessary. "In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidentiary matters outside the pleadings, such as affidavits and exhibits." *Evans Medical Ltd. v. American Cyanamid Co.,* 980 F.Supp. 132, 135 (S.D.N.Y.1997) (citing *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985)). *See also Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).

trict court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form. The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."). *See also Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588 (2d Cir.1993) (held that motion to dismiss was properly converted to summary judgment motion where non-moving plaintiffs supplemented their opposition papers with correspondence between the parties and the only documentation plaintiffs sought to add to record was more such correspondence). Indeed, the Second Circuit has found that "[e]ven where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." *In re G. & A. Books, Inc.,* 770 F.2d at 295 (citing *Condon v. Local 2944, United Steelworkers of America,* 683 F.2d 590, 593–94 (1st Cir.1982); *Cook v. Hirschberg,* 258 F.2d 56, 57–58 (2d Cir.1958)).

*Definition of "Employer" Under Title VII*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* prohibits covered employers from engaging in discriminatory employment practices. Section 2000e(b) defines "employer" as any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Courts have construed Title VII's definition of "employer" broadly. *See Dortz v. City of New York,* 904 F.Supp. 127, 144 (S.D.N.Y.1995). "[T]his term [employer] has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *E.E.O.C. v. Sage Realty Corp.,* 507 F.Supp. 599, 611 (S.D.N.Y.1981).

" 'In keeping with [this] liberal construction, the courts of this Circuit have held that the absence of a direct employment relationship does not bar a Title VII claim, and that liability extends beyond conventional, single-employer situations.' " *Dortz,* 904 F.Supp. at 144–145 (quoting *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 (E.D.N.Y.1994)). Thus, an individual may be the employee of more than one "employer" for the purposes of Title VII liability. *See Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344, 347 (S.D.N.Y.1984). For example, where two entities " 'have an integrated economic relationship and exercise common control over employment practices' that affect an employee, each may be held liable for the other's discriminatory acts and policies as an integrated enterprise." *Dortz,* 904 F.Supp. at 145 (quoting *Streeter v. Joint Industry Board of Elec. Indus.,* 767 F.Supp. 520, 527 (S.D.N.Y.1991)). And, "even where there is not an integrated enterprise or joint employer relationship, entities may be 'simultaneous' employers where they control the economic realities of the employment relationship with the employee and the means and manner of the worker's performance." *Dortz,* 904 F.Supp. at 145 (citing *Amarnare,* 611 F.Supp. at 347–48; *Goyette v. DCA Advertising, Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993)).

*Application to the Present Motion*

Defendant argues that plaintiff is not employed by the City of New York because she is employed by the Kings County Public Administrator. The City claims that the Office of the Public Administrator is not an agency of the City of New York, since the Public Administrators of the five counties within New York City are appointed by, and may be removed by, the judge or judges of the court of their respective counties. Def.'s Mem. of Law 3 (citing New York Surrogate's Court Procedure Act ("SPCA") § 1102(1)). The Deputy Public Administrators of the counties of New York city are appointed and may be removed by the surrogate court judge of that county. *Id.* (citing SPCA § 1103(1) and (3)). In contrast, New York City Agency heads are subject to appointment and removal by the Mayor. *Id.* (citing

New York City Charter § 6). Although New York City is required to include payment for the salaries of the five Public Administrators, their five Deputy Administrators, and the Public Administrators' employees in the expense budget of the City of New York, it is the Public Administrators who are vested with the power to appoint and remove employees to work in the office, not the city. *Id.* at 4 (citing SPCA §§ 1105, 1108(1)(a), 1108(1)(b)).

However, as noted above, an employee may have more than one employer for purposes of Title VII liability. And those employers need not be "an integrated enterprise" nor have a "joint employer relationship." At issue is not the relationship between the City and the Public Administrator but the relationship between the City and plaintiff. Thus, a determination of whether the public administrator is an agency of the City is not dispositive of the present motion, and this Court need not decide the question;[3] instead the issue before this Court is whether or not the City controls at least some of the working conditions of the plaintiff.

In making this determination, courts have looked to see whether an entity has "authority to hire or fire ..., to supervise ... work or conditions of employment, to determine [the] rate or method of pay, or to maintain records of ... employment." *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir.1996). Other indicia include dictating personnel policies and controlling budgets, *Houston v. Fidelity (National Financial Services)*, 1997 WL 97838 * 12 (S.D.N.Y. Mar.6, 1997).

Plaintiff has provided ample documentation evincing an employer-employee relationship between herself and the City of New York. Plaintiff's W–2 form lists "The City of New York" as her employer and her paycheck is issued by the City's payroll management system. See Pl. Mem. of Law, Exs. 1, 2. Furthermore, the holiday schedule that determines when plaintiff is entitled to a

paid holiday is set by the City of New York. See Pl. Mem. of Law, Ex. 3 (Memo from The City of New York, Office of Payroll Administration listing the holidays scheduled for 1996). The plaintiff has also provided a copy of the "Leave Regulations for Employees who are Under the Career and Salary Plan" ("Regulations"), which are promulgated by the City of New York. Pl. Mem. of Law, Ex. 4. Under section 1.0 B., the Regulations state: "Of those agencies which elected to come into the Career and Salary plan the following also accepted the Leave Regulations without reservations.... Public Administrator—Kings, · Queens, New York, Richmond." The Regulations set forth the annual leave allowances for employees, including plaintiff, who are employed by City agencies. Furthermore, even though the Public Administrator may determine when plaintiff is to arrive and leave work, it is the City that docks her pay for any late arrivals and, indeed, the City "reserves the right and power appropriately and for just cause to discipline or to discharge an employee for excessive lateness." The Regulations go on to state that any "[c]ontráctual provisions or agency policies regarding lateness, grace or excusal periods or lateness penalties inconsistent with the uniform lateness policy set forth in this Section *shall be superseded by this Section.*" Plaintiff has also provided a letter from the City of New York's Employees Benefits Program, which notifies her that she has the "opportunity to purchase Group Long–Term Care Insurance through the City of New York on a payroll deduction basis." Pl. Mem. of Law, Ex. 5.

Furthermore, the Audit Report on the Financial and Operating Practices of the Office of the Kings County Public Administrator July 1, 1994 to June 30, 1995, promulgated by the City of New York, Office of the Comptroller states:

> The SCPA [New York State Surrogate's Court Procedures Act] states that the salaries of the five New York City Public

---

**3.** Defendant Public Administrator has filed a partial opposition to City of New York's motion. It contends that this court should decline to rule on the issue of whether or not the Public Administrator is an agency of the City of New York; an action for declaratory judgment on that issue

was commenced on March 15, 1997 (well before this federal action was filed) in Supreme Court, Kings County. As noted above, the Court does not need to resolve this issue in order to decide whether the City of New York is plaintiff's employer for purposes of Title VII.

Administrators and their office staff shall be paid by the City of New York. As such, these individuals are City employees.... At fiscal year end, the Office staff [of the Public Administrator for Kings County] included 12 City employees, including the Public Administrator and his Deputy. Additionally, the [Public Administrator] employed eight non-City employees to work full- or part-time during fiscal year 1995.

And, although not dispositive of the present motion, the City is mandated by law to accept responsibility for the actions of the Public Administrator in other contexts. Under N.Y. Surrogate's Court Procedure Act § 1110 (McKinney's 1995), the City is held liable and accountable to "any aggrieved person for any act or omission of the Public Administrator" and the City is "answerable for the Faithful execution by the Public Administrator of all the duties of his office...."

As plaintiff and defendant conceded at oral argument, there is no factual dispute between the parties regarding the documentary evidence presented. Rather, the City argues that such evidence does not amount to a showing that the City is plaintiff's employee. Since the facts in this case are uncontested, the question of whether the City of New York is an "employer" for purposes of Title VII is solely a question of law. *See Jones v. Mega Fitness*, 1996 WL 267941 (S.D.N.Y.1996) ("Whether or not an employer-employee relationship exists [under Title VII] is a question of law that is decided on the basis of facts and circumstances in existence.") *See also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988). Plaintiff's evidence shows that defendant controls numerous aspects of her compensation and working conditions. The City of New York pays plaintiff, provides her with benefits, withholds her taxes, sets her holiday schedule, docks her pay when she is late, and retains the authority to discharge her if circumstances warrant. Thus, this court finds as a matter of law that the City of New York is plaintiff's employer for purposes of Title VII.[4]

Although the City cites *Pilman v. New York City Housing Authority*, 1996 WL 665856, 1996 U.S. Dist. LEXIS 16853 (S.D.N.Y.1996) in support of its contention that it is not plaintiff's employer for purposes of Title VII liability, that case may be distinguished from the present one. In *Pilman*, the Court found that there was no employment relationship between Pilman and the City of New York because "[t]he Housing Authority—not the City Defendants—had control over plaintiff's compensation and all terms, condition and privileges of her employment.... *As a public authority*,[5] the Housing Authority has complete control over the hiring and firing of its employees, including hiring, transferring, promoting, disciplining, and directing work assignment." *Id.* 1996 WL 665856 at *1, 1996 U.S. Dist. LEXIS 16853 at *2–3 (emphasis added). However, there is no indication that the Public Administrator is a public authority. And, in contrast to Pilman, the plaintiff in the present case has presented sufficient evidence to show that the City controls many aspects of plaintiff's compensation as well as the conditions and privileges of her employment.

All of the other cases that are cited by the City in support of its motion address the issue of whether an individual who works "freelance" is or is not an employee of a particular entity for purposes of statutory liability. For example, in *O'Connor v. Davis*, 126 F.3d 112 (2d Cir.1997), which is cited in defendant's reply brief, the question before the court is whether the plaintiff, who was an unpaid intern at the Rockland Psychiatric Center, was an employee of that center. The court found that plaintiff was not an employ-

---

4. Although not expressly authorized by Rule 56, a district court may grant summary judgment in favor of a nonmoving party. *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Furthermore, in the Second Circuit it is not necessary that the court give notice of its intention to enter summary judgment against the moving party. *Id.* This is particularly true where, as here, "the court's sua sponte determi-

nation is based on issues identical to those raised by the moving party." *Id.*

5. N.Y. Public Housing Law § 401 (McKinney 1989) states: "The New York City Housing Authority is hereby constituted and declared to be a body corporate and politic with all the powers rights and duties set forth in article five of the former state housing law."

ee, in large part because she was not paid by the Center. *Id*. at 115 ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because although 'compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, ... it is an essential condition to the existence of an employer-employee relationship.'") (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir.1990)). Similarly, in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the issue was whether an artist hired to create a sculpture for a nonprofit organization was an employee under the Copyright Act, and *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), addressed the issue of whether an insurance company agent was an employee of the insurance company for purposes of ERISA. Finally, *Frankel v. Bally, Inc.*, 987 F.2d 86 (2d Cir.1993), found that summary judgment was precluded on the issue of whether plaintiff, a shoe sales representative, was an employee or an independent contractor under the ADEA.

In the present case, however, it is clear that plaintiff is an employee for purposes of Title VII. The question is whether her employer is both the City of New York and the Public Administrator or only the latter. Since the cases cited by defendant address a somewhat different issue—whether an individual is an "employee" or an "independent contractor" within the meaning of various federal statutes—they are not dispositive of the present motion.

*City and State Causes of Action* [6]

 For purposes of plaintiff's State and City causes of action,[7] the New York State Human Rights law defines an employer as any employer with four or more persons in his employ. N.Y. Executive Law § 292(5) (McKinney's 1993). Although the City of New York meets this threshold definition of employer, there is again a question as to whether the City can be deemed plaintiff's employer for purposes of liability under the State's Human Rights law. In making this determination, "the Court must analyze four elements: 1) whether the proposed employer had the power of the selection and engagement of the employee; 2) whether the proposed employer made the payment of salary or wages to the employee; 3) whether the proposed employer had the power to control the employee's conduct." *Goyette v. DCA Advertising Inc.*, 830 F.Supp. 737, 746 (S.D.N.Y.1993) (citing *State Division of Human Rights v. GTE Corp.*, 109 A.D.2d 1082, 487 N.Y.S.2d 234, 235 (4th Dept.1985).)

Again, plaintiff has provided enough uncontested factual evidence for this court to find that the City of New York is plaintiff's employer as a matter of law. Plaintiff shows that the City pays her wages and benefits and controls her conduct as far as setting forth permissible holidays and docking her pay when she is late. And, although the City is not involved the Public Administrator's hiring decisions, the City can exercise its authority to fire plaintiff.

*Intentional Infliction of Emotional Distress*

The defendant City of New York, in footnote 6 of its Memorandum of Law in support of its motion, states: "Further, plaintiff has not pled any conduct by the City or its employees, let alone outrageous conduct, which would permit her intentional infliction of emotional distress claim to survive dismissal on the pleadings." Defendant did not brief this issue nor did plaintiff and neither party has presented any affidavits or other materials outside of the pleadings regarding this issue. Thus, defendant's motion regarding this cause of action remains one for dis-

---

6. The City of New York addresses the state and city claims in a footnote to its Memorandum of Law in support of its motion. The relevant sentence reads: "For the same reasons [as the Title VII claim], the State and City Human Rights Law claims should be dismissed against the City as well." Def's Mem. of Law 7, n. 6.

7. The Court treats these two causes of action jointly, since courts generally view the two statutes as comparable. *See Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 n. 4 (E.D.N.Y.1994) (citing *Pace College*, 377 N.Y.S.2d at 474, 339 N.E.2d 880 (N.Y.1975)); *Western Union Int'l Inc.*, 489 N.Y.S.2d at 668 (N.Y.Sup.Ct.1985).

missal under 12(b)(6) and is not converted to one for summary judgment.

■ The standard in New York for a claim for intentional infliction of emotional distress is well established:

New York uses the Restatement 2d of Torts definition of intentional infliction of emotional distress, requiring plaintiff to allege four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a casual connection between the conduct and the injury; and (4) severe emotional distress. *Mohamed v. Marriott Int'l, Inc.*, 905 F.Supp. 141, 157 (S.D.N.Y.1995); *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). This standard is extraordinarily strict, thus liability will flow only from conduct that "is so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Martin v. Citibank N.A.*, 762 F.2d 212, 220 (2d Cir.1985).

*Perry v. Burger King Corp.*, 924 F.Supp. 548 (S.D.N.Y.1996). However, "[i]n the rare instances where the New York Courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination . . . ." *Gerzog v. London Fog Corp.*, 907 F.Supp. 590, 604 (E.D.N.Y.1995).

■ Nevertheless, "for an employee to maintain an action against her employer for an intentional tort, she must make a 'specific allegation that the corporate defendant committed [an] intentional tortious or willful act.'" *Chapelle v. Beacon Communications Corp.*, 1993 WL 465312 at *4 (S.D.N.Y. Nov.12, 1993) (quoting *Hart v. Sullivan*, 84 A.D.2d 865, 445 N.Y.S.2d 40, 41 (3d Dep't 1981)). Here plaintiff has not alleged willfulness on the part of the City of New York. Plaintiff's claim states: "Defendant's aforementioned misconduct, including subjecting plaintiff to repeated and unwelcome demands for sexual favors, offensive sexual comments, intimidation, and retaliation, was and is outrageous . . . . Defendant Public Administrator encouraged, authorized or ratified this misconduct." There is no mention at all in plaintiff's complaint of any tortious or willful acts on the part of the City of New York. Thus, plaintiff's claim against the City of New York for intentional infliction of emotional distress is dismissed.

### CONCLUSION

For the foregoing reasons, defendant City of New York's motion for summary judgment is granted in part and denied in part. Plaintiff's claim against the City for intentional infliction of emotional distress is dismissed. Defendant's motion regarding the remainder of plaintiff's claims is denied. Furthermore, this Court grants summary judgment for the plaintiff, finding that as a matter of law the City of New York is plaintiff's employer for purposes of Title VII and the New York State and City Human Rights Laws.

SO ORDERED.