**TARSHIS, Plaintiff,**

v.

**THE RIESE ORGANIZATION, Defendant.**

**No. 96 CIV. 7513(CBM).**

United States District Court, S.D. New York.

April 2, 2002.

---

Randall D. Bartlett, Bartlett & Bartlett LLP, for Plaintiff.

Mark E. Spund, Davidoff & Malito LLP, for Defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

## I. INTRODUCTION

Plaintiff Fred Tarshis brings this action against defendant The Riese Organization, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and Article I, section 11 of the New York State Constitution. Now before the court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated in this opinion, defendant's motion will be granted.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in October 1996 and the case was assigned to Judge Batts. In November 1996 defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In October 1998 defendant's motion was granted and the case dismissed for failure to state a claim upon which relief could be granted. *See Tarshis v. Reise Org.,* No. 96 Civ. 7513, 1998 WL 709817 (S.D.N.Y. Oct.9, 1998). Plaintiff appealed pro se. In April 2000 the Second Circuit vacated the judgment of the district court and remanded the case for further proceedings. *See Tarshis v. Riese Org.,* 211 F.3d 30 (2d Cir.2000). After remand, the parties engaged in discovery which was completed in April 2001. In July 2001 the case was transferred to the undersigned, and in October 2001 defendant filed the instant motion for summary judgment. The court heard oral argument on defendant's motion on December 14, 2001.

## III. FACTUAL BACKGROUND

The parties' Local Rule 56.1 Statements and other papers are replete with minute details, most of which have little relevance to the instant motion. The relevant facts are set forth below and, unless otherwise indicated, are not in dispute.

Plaintiff Fred Tarshis was hired by defendant The Riese Organization ("Riese") in January 1974 and laid-off on January 8, 1994. Mr. Tarshis, who is white, was born in 1927 and was sixty-six years old when he was laid-off. Employment records maintained by Riese, however, indicate that Mr. Tarshis was born in 1937, which would have made him fifty-six years of age at the time he was laid-off. Other Riese employees have indicated that Mr. Tarshis represented that he was in his mid-fifties at the time of his termination. During his twenty year tenure at Riese, Mr. Tarshis

worked various jobs—including dishwasher, bartender, cashier, host, waiter, relief manager, and assistant manager—at several Riese-owned restaurants, including Brew Burger, Lindy's, The Griddle Coffee Shop, Dunkin' Donuts, Childs, and London Derry Pub.

In October 1993 Mr. Tarshis was employed by Riese as a relief manager—i.e., a substitute night manager—at two locations, approximately half-time at the Brew Burger at 810 Seventh Avenue ("Brew Burger 810") and half-time at the Lindy's across the street at 825 Seventh Avenue ("Lindy's 825"). Mr. Tarshis's supervisor at both locations was Roberto "Tony" Rosado, who is Hispanic. Mr. Rosado was the night district manager for all Riese restaurants and he also directly supervised four Lindy's restaurants. The general manager of Brew Burger 810 was Mary Torres, and the assistant manager was Hugo Villavicencio, both of whom are Hispanic. The general manager of Lindy's 825 was Ebrahim Kardooni, who was of Indian descent, and the assistant manager was Fred Rosenblatt, who is white and Jewish.

In or about mid–1993, Riese changed its policy concerning vacations for management-level employees. Previously, managers were not required to take vacations if they chose not to do so. The new policy required each manager to take at least one week of actual vacation. Riese claims a memorandum detailing the policy was sent to all managers. Mr. Tarshis claims he never saw the memorandum, but he admits to having learned of the policy orally from Mr. Rosado sometime late in the summer of 1993. In September 1993 Mr. Tarshis told Mr. Rosado that he was going to take a four week vacation in October.

Mr. Tarshis went on vacation on October 2, 1993. Brew Burger 810 closed on October 9, 1993. Ms. Torres, the general man-

ager of Brew Burger 810, was informed of the closing approximately two weeks before it was to occur by her supervisor, Mr. Marlon Muentes. Ms. Torres was told that she would be laid-off. Mr Villavecencio, the assistant manager, was transferred to a Tad's Restaurant, where he had worked previously for Mr. Muentes.

Mr. Tarshis states that he had heard rumors that the Brew Burger 810 might close down, since Riese was always closing restaurants, but he did not hear that it was going to close while he was on vacation. He did know, however, that every other Brew Burger had closed by this point and that Brew Burger 810 was going to close eventually (if not necessarily while he was on vacation).

While Mr. Tarshis was on vacation, Mr. Rosado assigned Mike Perez, a fifty-nine year old Hispanic male to Mr. Tarshis's part-time relief manager position at Lindy's 825. Mr. Perez had been working for Riese for three years and had previously been an assistant manager prior to being laid off in May 1993. He was rehired a month later and given the position of part-time relief manager at two other Lindy's. In Mr. Tarshis's absence, Mr. Perez was assigned the position at Lindy's 825 in addition to his positions at the two other Lindy's.

Also while Mr. Tarshis was on vacation, Mr. Rosado informed his supervisor, Tom Carpenter, that he did not have an opening or need for a full-time relief manager at Lindy's 825 and that he could not place Mr. Tarshis. Mr. Rosado and Mr. Carpenter never discussed Mr. Tarshis's age. When Mr. Tarshis returned from vacation he went to Lindy's 825 to go to work and the manager informed him that there was no job for him.

Approximately two weeks later, Mr. Tarshis spoke with Mr. Carpenter about losing his job. Mr. Carpenter then called Mr. Rosado, telling him that he did not want to lay off Mr. Tarshis during the holiday season. Mr. Carpenter told Mr Rosado to assign Mr. Tarshis to a job as a host at the Lindy's across from Radio City Music Hall. Because of the Christmas Show at Radio City, that particular Lindy's was very busy and needed the extra help. In fact, Ms. Torres—the assistant manager who had also been laid off when Brew Burger 810 closed—was also rehired for temporary work over the holidays at the Radio City Lindy's. At the conclusion of the holiday season, Mr. Rosado informed Mr. Carpenter that he once again had no position for Mr. Tarshis. Mr. Carpenter directed Mr. Rosado to tell Mr. Tarshis that he was once again going to be laid off. Again, the issue of Mr. Tashis's age was never discussed between Mr. Rosado and Mr. Carpenter.

Mr. Rosado notified Mr. Tarshis that he would once again be laid off. Mr. Rosado completed a personnel form called a "Notice of Separation/Termination." On the form, Mr. Rosado wrote that Mr. Tarshis had been laid off and that Mr. Tarshis was "ok to rehire for any small operation, low volume location. ok asst. manager." The form was dated January 8, 1994, and initialed with "tc" for Tom Carpenter.

During his entire time with Riese, Mr. Tarshis never heard any supervisors make disparaging remarks concerning his race or his age.

Ms. Torres, after the holiday work at Lindy's Radio City, was hired by Mr. Rosado to fill a vacant general manager position at another Lindy's (Lindy's 1525). Ms. Torres was replacing a white woman, Ms. Gladys Roman, who had been transferred to another Riese restaurant. Ms. Torres, who is now sixty years old, remains the general manager of Lindy's 1525.

Sometime in 1994, Riese subsumed the job title of "relief manager" into that of

"assistant manager." Mr. Perez, who was relief manager at Lindy's 825, was reassigned to work under Ms. Torres as an assistant manager at Lindy's 1525. Mr. Perez held that position until his retirement in November 2000.

In May 1994 Mr. Rosado lost his position as night district manager in a restructuring of Riese's mid-level management. His supervisory duties over the four Lindy's restaurants were transferred to Al Knapp, a white male. As a result, Mr. Rosado was told he would be laid off. At about that time, the general manager position at Lindy's 825 became vacant due to the death of the employee. Mr. Rosado asked to be considered for that position and accepted an offer for it, despite a reduction in salary—from $52,000 to $37,000.

The Brew Burger 810 where Mr. Tarshis worked was reopened at some point in 1994 as a Martini's Restaurant. The person hired as general manager was a white woman who had worked previously for Reise, and the person hired as assistant manager was a white woman who had worked previously with Martini's new chef, a white male. None of the managers who had worked at Brew Burger 810 was rehired to work at Martini's.

In March 1994 Mr. Tarshis went to a job fair for Riese's Fast Food Division and gave his résumé to a Riese representative. Mr. Tarshis was subsequently called and offered a job with one of Riese's Dunkin' Donuts. Riese claims it was an assistant manager position, but Mr. Tarshis states that it was more of a "porter" or "utility person" position. The position required a six-day work week and the salary was $360 per week, $75 per week less than what Mr. Tarshis was earning previously with Riese. Mr. Tarshis advised a friend of his (and fellow Riese employee), Spencer Robinson, that he had been offered the Dunkin' Donuts position. Mr. Robinson encouraged

Mr. Tarshis to take it. Mr. Tarshis decided to decline the offer because it was, in his mind, an inferior position for less pay. Mr. Tarshis opted to continue drawing unemployment.

In the May 22, 1994, edition of the *New York Times,* Riese placed an advertisement looking for assistant and general managers. On May 24, 1994, Mr. Tarshis wrote Steven Gaber, Riese Director of Human Resources Training, seeking employment as mentioned in the advertisement. Mr. Tarshis was not rehired.

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine issue as to material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden is on the movant to demonstrate that no genuine issue exists respecting any material fact. *See Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994). "In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). That is to say, the parties' Local Rule 56.1 Statements, deposition testimony, affidavits, and documentary evidence must be viewed in the light most favorable to the plaintiff. *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 165 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996).

The Second Circuit has repeatedly indicated that trial courts should be wary of granting summary judgment in discrimination cases since intent and state of mind are typically at issue and direct evidence of

discriminatory intent is rare. *See, e.g., Holz. v. Rockefeller & Co., Inc.,* 258 F.3d 62, 69 (2d Cir.2001); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *Gallo,* 22 F.3d at 1224. However, a plaintiff must nevertheless "offer concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505); *see also Weinstock v. Columbia Univ.,* 224 F.3d 33, 41–42 (2d Cir.2000) (noting that "impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable"). Plaintiff cannot simply "rely upon 'mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Leichter v. St. Vincent's Hosp.,* No. 94 Civ. 7537, 2001 WL 1160748 (S.D.N.Y. Sept.28, 2001) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to avoid summary judgment).

## V. ANALYSIS OF PLAINTIFF'S INDIVIDUAL CLAIMS

### A. Plaintiff's Federal Claims

Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

It shall be an unlawful employment practice for an employer—(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Plaintiff alleges that defendant "willfully discriminated against [him] based upon his race (Caucasian or white) or his national origin or ethnicity (of European descent) in violation of [Title VII]." 2d Am. Compl. ¶ 65.[1]

The language of the ADEA mirrors that of Title VII:

It shall be unlawful for an employer—(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). Plaintiff alleges that defendant "willfully discriminated against [him] based upon his age in violation of the [ADEA]." 2d Am. Compl. ¶ 59.

In the absence of direct evidence of discrimination, courts analyze claims brought under Title VII and the ADEA under the familiar burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376 (2d Cir.2001) (Title VII); *Schnabel v. Abramson,* 232 F.3d 83 (2d Cir.2000) (ADEA). Under the *McDonnell Douglas* analysis, plaintiff "has the initial burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" *Carlton,* 202 F.3d at 134 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To establish a prima facie case of discrimination under either Title VII or the ADEA, a plaintiff must show (1) that he or she was a member of a protected group, (2) that he or she was qualified for the position in question, (3)

---

1. The Second Amended Complaint also alleges that plaintiff was "subjected to disparate treatment and disparate impact." *Id.* ¶ 66. However, plaintiff has not briefed the issue of disparate impact, and at oral argument plaintiff's counsel explicitly disavowed any claim under a theory of disparate impact. *See* Tr. of 12/14/01 Oral Arg. at 43.

that he or she was discharged from that position, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *See Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir.2001) (Title VII); *Schnabel*, 232 F.3d at 87 (ADEA). For purposes of this summary judgment motion, defendants concede (and the court assumes) that plaintiff has met his burden in making out prima facie cases.

■ Once a plaintiff has established his or her prima facie case, the burden then shifts to the defendant to "articulat[e] a legitimate, non-discriminatory reason for the employment action." *Weinstock*, 224 F.3d at 42. This burden is merely "one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Defendant's proffered reason for plaintiff's termination is that "there was no full time relief manager's position at Lindy's for him when he returned from vacation in November, 1993." Def.'s Loc. R. 36.1 Stmt. ¶ 97; *see* Rosado 10/05/01 Aff. ¶ 7; Torres 10/03/01 Aff. ¶ 7. Plaintiff, however, seems to believe that this explanation fails to satisfy the requirements of the second strand of the *McDonnell Douglas* analysis. *See* Pl.'s Mem. of Law at 16 ("Riese has not presented non-discriminatory, legitimate business reasons for the adverse employment actions it impermissibly took against Tarshis."). Plaintiff is mistaken. At this stage, defendant need only articulate a "clear and specific" reason for plaintiff's termination, and defendant has done so. *See Schnabel*, 232 F.3d at 88. As the Second Circuit has noted in this very case, "[w]e recognize that a reduction-in-force or restructuring that results in an elimination of jobs often is a legitimate reason for dismissing an employee." *Tarshis*, 211 F.3d at 37 (citing *Woroski v. Nashua Corp.*, 31 F.3d 105, 109 (1994), *Gallo*, 22 F.3d at 1226, and *Dister*,

859 F.2d at 1116). The court therefore concludes that defendant has met its burden under the second strand of the *McDonnell Douglas* analysis.

■ Since defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff, the burden now shifts back to plaintiff to present sufficient evidence whereby a reasonable jury could conclude that defendant unlawfully discriminated against him. *See Schnabel*, 232 F.3d at 88. A plaintiff can accomplish this by showing that a defendant's stated reasons for discharging him were pretextual, but such evidence of pretext is "simply one form of circumstantial evidence that is probative of intentional discrimination," and— when combined with a prima facie case— may not be enough to withstand a defendant's motion for summary judgment. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097; *Schnabel*, 232 F.3d at 89–90. The pivotal inquiry at this stage of the summary judgment analysis is "whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination." *Minton v. Lenox Hill Hosp.*, 160 F.Supp.2d 687, 693–94 (S.D.N.Y.2001) (citing *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir.2000)).

■ Whether plaintiff has met his or her burden in any particular case will depend on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Reeves*, 530 U.S. at 148–49, 120 S.Ct. 2097; *see also Schnabel*, 232 F.3d at 90 ("*Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the

plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' ") (quoting *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097). Thus, even if a plaintiff establishes a prima facie case and presents some evidence of pretext, summary judgment is still appropriate where, for instance, "the record conclusively reveal[s]" a nondiscriminatory reason for the employer's action, or where the plaintiff "create[s] only a weak issue of fact" on the issue of pretext and there exists "abundant and uncontroverted independent evidence that no discrimination [has] occurred." *Id.* (quoting *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097) (internal quotations omitted).

■■■■ *The ADEA Claim.* When a plaintiff has been replaced by someone older than himself, maintaining an age discrimination claim becomes rather difficult because a fact-finder can draw no reasonable, immediate inference of discrimination. *See Carr v. Westlb Admin., Inc.,* 171 F.Supp.2d 302, 307 (S.D.N.Y.2000); *see also O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("In the age-discrimination context, [an inference of discrimination] cannot be drawn from the replacement of one worker with another insignificantly younger."); *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408–09 (2d Cir.1991) ("[A] prima facie case of age discrimination ... requires a plaintiff alleging discriminatory termination to show ... (4) that a younger individual has replaced her.").

Thus the court notes that, while plaintiff's prima facie case has been assumed for purposes of this motion, it is nevertheless very weak. Plaintiff admits that all of defendant's business records indicate that his date of birth was March 15, 1936, which would have made him fifty-six years old at the time of his layoff. *See* Pl.'s Loc.

R. 56.1 Stmt. ¶ 2. Moreover, defendant has produced uncontroverted evidence that plaintiff told at least one manager on a number of occasions that he was in his mid-fifties. *See* Torres 10/03/01 Aff. ¶ 19. Plaintiff has produced no evidence indicating that defendant or any of its employees knew his true age. As far as defendant knew, plaintiff was two years *younger* than his replacement at Lindy's 825, Mr. Perez, who was fifty-nine years of age at the time of plaintiff's layoff. *See* Pl.'s Loc. R. 56.1 Stmt. ¶ 31. Since plaintiff was replaced by a person who defendant thought was older, plaintiff's prima facie case is cast into serious doubt. *See Owens,* 934 F.2d at 405; *Carr* 171 F.Supp.2d at 307.

Next, plaintiff has not adduced any evidence to discredit defendant's explanation for his termination. Plaintiff admits that his Notice of Termination/Separation indicated that the reason for his termination was "layoff" and that plaintiff was "ok to rehire for any small operation, low volume location. ok asst. manager." Spund 10/08/01 Aff. Ex. E; Pl.'s Loc. R. 56.1 Stmt. ¶ 49. Defendant states (and plaintiff has not disputed) that plaintiff's position at Brew Burger 810 fell under this description and that, at the time of plaintiff's separation, defendant had no other comparable full-time positions. *See* Rosado 10/05/01 Aff. ¶ 43. When a suitable position became available at one of defendant's Dunkin' Donuts restaurants, plaintiff turned it down. Pl.'s Loc. R. 56.1 Stmt. ¶ 64.

Finally, plaintiff has not adduced any other evidence, direct or otherwise, which could support a finding of discrimination on the basis of age. To the contrary, plaintiff admits that the ages of the other twenty-nine persons that defendant either laid off or terminated in the year preceding and six months following plaintiff's termination ranged from twenty-two to sixty-

seven. Pl.'s Loc. R. 56.1 Stmt. ¶ 94. Plaintiff also admits that he "did not hear of any disparaging remarks made to him about his age," and that his supervisors never discussed his age when contemplating his layoff. *Id.* ¶¶ 65, 37.

Therefore, given that plaintiff's prima facie case is exceedingly weak, that plaintiff has offered no evidence that defendant's proffered explanation is false, and that plaintiff has adduced no other evidence which would permit a finding of discrimination on the basis of age, defendant is entitled to summary judgment on plaintiff's age discrimination claims.

■ *The Title VII Claim.* Plaintiff's claims of discrimination on the basis of race or national origin are similarly unsupportable. While plaintiff's Memorandum of Law is full of conclusory allegations of discrimination, it fails to identify sufficient evidence to permit a finding of discrimination in violation of Title VII.

■ First, the court notes that plaintiff has stated the bare minimum of a prima facie case. Plaintiff was replaced at Lindy's 825 by someone who was not white, and "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." *Zimmermann,* 251 F.3d at 381. This prima facie case, however, is somewhat weakened by the fact that plaintiff's half-time position at Brew Burger 810 was *eliminated* altogether and never filled. *See* Pl.'s Loc. R. 56.1 Stmt. ¶ 27.

Next, as explained above in the analysis of plaintiff's ADEA claim, plaintiff has not adduced any evidence to discredit defendant's explanation for his termination.

In an effort to nevertheless show discrimination in violation of Title VII, plaintiff posits the following theory: that his supervisor Mr. Rosado favored people "more like [Mr. Rosado] culturally," i.e., Hispanics, and that Mr. Rosado sought to "solidify[ ] an Hispanic grouping within Riese's manager class" by encouraging plaintiff to go on vacation and replacing him with Mr. Perez while gone. Pl.'s Mem. of Law at 20, 17.

Such a theory, while plausible in the abstract, is simply not borne out by the evidence. First, plaintiff claims that "Perez had been called back from a layoff precisely at the time that Tarshis was on vacation," i.e., October 1993. *Id.* at 16–17. This, however, contradicts what the evidence shows (and what plaintiff admits in his Local Rule 56.1 Statement)—that Mr. Perez was laid off early in 1993 and then rehired in June 1993 to work at two other Lindy's, well before plaintiff went on vacation (and even before plaintiff told his supervisor of his intention to take a vacation). *See* Pl.'s Loc. R. 56.1 Stmt. ¶¶ 32–34. Moreover, Mr. Rosado did not force plaintiff to go on vacation. He voluntarily did so, obtaining a passport in August 1993 and informing Mr. Rosado in September 1993 of his intention to take a vacation in October. *See* Tarshis 11/04/01 Decl. Ex. 4; Pl.'s Loc. R. 56.1 Stmt. ¶ 25. Mr. Rosado did not learn that Brew Burger 810 would be closed until *after* plaintiff expressed his intention to go on vacation. *See* Rosado 10/05/01 Aff. ¶ 28. Finally, plaintiff's layoff was approved by Mr. Rosado's supervisor, a white male. *See* Pl.'s Loc. R. 56.1 Stmt. ¶ 50.

Moreover, an examination of defendant's personnel records do not support a finding of discrimination. During the year preceding and six months following plaintiff's termination, white persons were not terminated in numbers disproportionate to their class size. *See* Pl.'s Loc. R. 56.1 Stmt. ¶¶ 91–93; Spund 10/08/01 Aff. Ex. M; Ladota 10/04/01 Aff. ¶ 16. Plaintiff also admits that he "did not hear of any disparag-

ing remarks made to him about his race." Pl.'s Loc. R. 56.1 Stmt. ¶ 66.

In sum, having reviewed the record in this case, the court finds that plaintiff's prima facie case is not particularly strong, that plaintiff has offered no evidence that defendant's proffered explanation is false, and that plaintiff has adduced no other evidence which would permit a finding of discrimination on the basis of age. Defendant is therefore entitled to summary judgment on plaintiff's Title VII claims.

B. Plaintiff's State Law Claims

 *The NYSHRL Claims.* Plaintiff's claims brought under the New York State Human Rights Law, N.Y. Exec. Law § 296, are analyzed under the same burden-shifting scheme as plaintiff's ADEA and Title VII claims. *Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264 n. 1 (2d Cir.1999); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992). For the reasons stated in Part V.A, *supra,* defendant is entitled to summary judgment on plaintiff's NYSHRL claims.

*The New York State Constitution Claims.* Plaintiff's Second Amended Complaint purports to state a claim under the New York State Constitution. Article I, section 11 of the New York State Constitution provides that "[n]o person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person, or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state." N.Y. Const. art. I, § 11. However, as defendant ably points out, this clause "is not self executing and prohibits discrimination only as to civil rights which are elsewhere declared by Constitution, statute, or common law." *People v. Kern,* 75 N.Y.2d 638, 555 N.Y.S.2d 647, 554 N.E.2d 1235, 1242 (1990) (internal quotations omitted) (citing *Dorsey v. Stuyvesant*

*Town Corp.,* 299 N.Y. 512, 87 N.E.2d 541, 548 (1949)).

Plaintiff, now apparently realizing this legal constraint, has indicated that he "withdraws his claim under Article I, Section 11 of the New York State Constitution." Pl.'s Mem. of Law at 1 n. 1. The court will interpret plaintiff's putative withdrawal of the claim as a request for its voluntary dismissal. *See* Fed.R.Civ.P. 41(a)(2). That request will be granted and plaintiff's claims under the New York State Constitution will be dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, defendant's summary judgment motion is **GRANTED** as to the to the Title VII, ADEA, and NYSHRL claims. Plaintiff's claim under the New York State Constitution is **DISMISSED WITH PREJUDICE.** The Clerk of Court is directed to enter judgment for defendant and remove this case from the active docket.

SO ORDERED.