Harold JETTER, Plaintiff–Appellant,

v.

KNOTHE CORP., Richard Bern, Brian Minkoff, Ely Minkoff and William Nomberg, Defendants–Appellees.

Docket No. 02–7220.

United States Court of Appeals, Second Circuit.

Argued: Feb. 18, 2003.

Decided: March 4, 2003.

David E. Prager, Phillips Nizer LLP, (James S. Frank on the brief), New York, NY, for Plaintiff–Appellant.

Bertrand B. Pogrebin, Rains & Pogrebin, P.C., (Mark N. Reinharz on the brief), Mineola, NY, for Defendants–Appellees.

Before: KEARSE and B.D. PARKER, Circuit Judges, and BERMAN, District Judge.*

---

\* The Honorable Richard M. Berman of the United States District Court for the Southern District of New York, sitting by designation.

PER CURIAM.

## I. BACKGROUND

Plaintiff and his two brothers, Seymour Jetter and Bernard Jetter, co-founded an apparel company called General Niteware Corporation ("GNC") in 1966. GNC was acquired by Knothe pursuant to an Asset Purchase Agreement in or about June 1997. As part of the acquisition, Plaintiff and his brothers went to work for Knothe. At the time, they were aged 70 (Harold), 72 (Seymour) and 67 (Bernard). Plaintiff negotiated a five-year employment contract with Knothe and was to serve as Managing Director of Knothe's General Nitewear Division. Seymour Jetter and Bernard Jetter agreed to three-year contracts as commissioned salesmen.[1]

Soon after the acquisition, significant work-related tensions developed between Plaintiff and his new employer. Plaintiff complained that he was not provided with a proper office or the necessary assistance and that certain management duties were assigned to other employees. Knothe employees testified at deposition or submitted affidavits, *inter alia*, that Plaintiff failed to follow company directives and office protocol, that he screamed at fellow employees and that he placed orders and quoted special prices and terms to customers without authorization. Some also complained that he was disorganized.

According to Defendants, in October 1997, individual defendants Richard Bern, William Nomberg, Brian Minkoff and Ely Minkoff met with Plaintiff to discuss Plaintiff's performance problems. Plaintiff contends that the meeting concerned company

---

1. Seymour Jetter renewed his contract and is still employed by Knothe. Bernard Jetter passed away several months after the acquisition.

production. On February 3, 1998, Bern sent Plaintiff a memo which addressed Defendants' concerns over "lack of controls and planning" and Plaintiff's "habit of berating fellow employees behind their back." About one week later, the parties met again to discuss Plaintiff's performance.

In March 1998, Knothe acquired another apparel company called State–O–Maine, and, according to Defendants, this acquisition prompted a restructuring and consolidation of General Nitewear and State–O–Maine and the redistribution of sales accounts among various salespersons. Sales representatives were directed to report to Maria Zoccoli, who was made Vice–President of sales.

On July 24, 1998, Defendants wrote to Plaintiff notifying him of duties he was expected to perform and also stating that as of December 31, 1998 his physical presence at Knothe would no longer be required, but adding that as long as Plaintiff did not participate in any sales or other apparel positions Knothe would continue to honor its financial obligations under Plaintiff's employment contract.[2]

Nearly six months after the July 24th letter was sent, on December 10, 1998, an attorney for Plaintiff contacted Knothe by phone and asserted that Knothe had breached Plaintiff's employment contract, discriminated against Plaintiff based upon his age (which was then 71) and that Plaintiff was entitled to immediate payment of his entire salary under the contract. That same day, Defendants asked Plaintiff to gather his belongings and to leave the premises, i.e., three weeks earlier than his December 31, 1998 scheduled departure

date. Knothe continued to pay Plaintiff's salary and benefits under his contract.

In late January or early February, a sales representative reported to Knothe executives that Plaintiff had discussions with a Knothe customer presumably on behalf of one of Knothe's competitors. On February 18, 1999, Jetter's attorney sent a letter to Defendants stating, *inter alia,* that "[i]n view of Knothe's breach, Mr. Jetter is no longer bound by any restrictive covenant contained in the contract." On February 19, 1999, Knothe terminated Plaintiff's employment allegedly for cause, citing as reasons Plaintiff's refusal to perform assigned duties, his solicitation of business from Knothe customers on behalf of competitors and his unwillingness to be bound by the restrictive covenant in his employment Agreement.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo,* construing the evidence in the light most favorable to the non-moving party. *See Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

We analyze ADEA discrimination (and retaliation) claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first present a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff does this, discriminatory animus is presumed and the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id.* at 802–03, 93 S.Ct. 1817. If defendant does so, the plaintiff must show

---

**2.** Plaintiff's contract contained a non-compete covenant which provided that "until one (1) year after termination of his employment with the Corporation, he shall not, without the prior written consent of the Corporation, engage, or become interested in any capacity ... in any business ... which business shall be competitive with any business of the Corporation."

that the articulated non-discriminatory reason for defendant's action is in fact a pretext for discrimination. *Id.* at 804–05, 93 S.Ct. 1817.

Plaintiff's Age Discrimination Claim

■ The district court correctly determined that, while a prima facie case of discrimination had been made, the reasons proffered (and, ultimately the evidence adduced) by Defendants for altering Plaintiff's working conditions related to internal reorganization, job performance and non-compete issues and not at all to Plaintiff's age. The evidence adduced included six affidavits of Knothe employees and executives which detailed Plaintiff's difficult adjustment from the role of CEO of his own company to that of Knothe employee, including his disregard of company rules and practices, his failure to submit orders on a timely basis, his entering into special deals with customers and his berating of Knothe employees. Indeed, Plaintiff acknowledged that he had made derogatory statements about Knothe, that his job responsibilities were reassigned for non-discriminatory reasons and that early on he expressed his desire to be bought out of his contract.

■ Plaintiff argues that the district court erred in relying on the "same actor" rationale in concluding that he failed to adduce adequate proof of age discrimination. That rationale is that when the person who made the decision to fire was the same person who made the decision to hire, especially when the firing occurred only a short time after the hiring, it is difficult to impute to him an invidious firing motivation that would be inconsistent with his decision to hire. *See, e.g., Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997). This rationale has usually been applied in circumstances where the person making the hiring decision had no collateral incentive to hire any particular candidate. Here, in contrast, Defendants wanted to acquire Plaintiff's company, and in order to succeed in that desire, they were forced to hire Plaintiff. The same-actor rationale has far less applicability in these circumstances. However, we are not persuaded that the district court's ruling depended to any substantial degree on this rationale, and we thus see no reason to disturb its decision that Plaintiff failed to adduce sufficient evidence from which a rational factfinder could find that he had been fired because of his age. Indeed, Plaintiff provided virtually no proof of age discrimination. *See James v. New York Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000) ("[T]he test for summary judgment is whether the evidence can reasonably support a verdict in plaintiff's favor.").

Plaintiff's Retaliation Claim

■ The district court correctly concluded that Plaintiff failed even to establish a prima facie case of retaliation with respect to Defendants' directive that Plaintiff clear out his office on December 10, 1998 and Defendants' alleged advice to customers that Plaintiff had retired, since, in the circumstances presented here, neither action constituted adverse employment action. *See Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466–67 (2d Cir.1997) ("[T]he loss of an office and phone by an employee who has already been informed of a termination decision, and is waiting out his numbered days on the payroll searching for a new job, does not, in and of itself, amount to adverse employment action."); *Connell v. Bank of Boston,* 924 F.2d 1169, 1180 (1st Cir.1991) ("peremptory discharge of plaintiff two weeks prior to the notified date ... was not an adverse employment action").

■ On appeal, Plaintiff appears principally to challenge the district court's (cor-

rect) determination that, while Plaintiff did assert a prima facie case of retaliatory termination on February 19, 1999, he was unable to rebut Defendants non-discriminatory reason(s) for taking such action, which included Plaintiff's statement in the February 18 letter from his attorney that he was "no longer bound by any restrictive covenant contained in the contract." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (plaintiff may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence"); *Slattery v. Swiss Reins. America Corp.*, 248 F.3d 87, 95 (2d Cir.2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Lastly, the district court properly declined to resolve Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. *See Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.