**Angela FARULLA, Plaintiff,**

v.

**NEW YORK SCHOOL CONSTRUC-TION AUTHORITY, Lehr, Mcgovern, Bovis/Nidus Corporation, Defendants.**

No. 01 CV 1211(JBW).

United States District Court,
E.D. New York.

May 29, 2003.

Frank L. Pellegrini, Pellegrini & Associates, LLC, New York City, for Angela Farulla.

Neil S. Rosolinsky, City of New York Law Department, New York City, Soraya Zolaikaian Berg, Office of General Counsel, Long Island City, NY, for New York City School Const. Authority.

Guy Michael Allen, Abbott, Reiss & Allen, PC, Long Beach, NY, for Lehr, McGovern, Bovis/Nidus Corp.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

### I. Introduction

Defendant Lehrer, McGovern, Bovis, Inc. (Bovis) (incorrectly identified in the caption as Lehr, Mcgovern, Bovis/Nidus Corporation) moved for summary judgment. That motion was denied orally after hearing. Bovis now moves for reargument. Reargument is granted. The original decision denying summary judgment is adhered to for the reasons stated below.

Plaintiff alleges that she was suspended and terminated from her job because of her age, in violation of the Age Discrimination in Employment Act of 1987 (ADEA). Defendants have moved for summary judgment. Plaintiff's claim is muddied by the fact that there are three companies that could be considered plaintiff's employer—only two of which are named as defendants. Immediately below is a summary of the major issues. More thorough analysis follows in Parts II through V.

### A. Age as a Motivating Factor

Plaintiff was an employee of the School Construction Authority (SCA) for five years between 1991 and 1996. For the last seven weeks of her employment, from August 1996 to September 1996, she worked in a new SCA office under a new supervisor. She argues that she was terminated from this position because of her age. In support of her claim, she alleges: (1) that her supervisor hired a woman who

was less experienced and fifteen years younger than plaintiff, that the supervisor instructed plaintiff to train her, and that one week later he fired plaintiff; (2) that one of the two justifications given for her termination was subsequently denied by her supervisor during his deposition, and that although he provided new justifications for her termination in his deposition, some of those justifications are undermined by his own statements; and (3) that the woman who replaced her was treated differently from her during the week that their employment overlapped—specifically, that the replacement was allowed to delegate work to a student intern while plaintiff was prohibited from doing so.

Although this evidence sets forth a weak case for age discrimination, it is sufficient to survive summary judgment. Plaintiff has made out a prima facie case and has provided some evidence that at least one of defendants' "nondiscriminatory reasons" for firing her was false.

B. Definition of "Employer" under the ADEA

If the court finds that plaintiff can defeat summary judgment generally, it then has to determine if each defendant is her employer. SCA entered into a Construction Management Agreement (the Agreement) in 1995 with Bovis in association with the Nidus Corporation (Nidus). Plaintiff was encouraged by SCA to change positions in August 1996; when she did so, she also changed employers—instead of being directly employed by SCA, she was now employed by Nidus, which appears to be a subcontractor of Bovis, which in turn is a subcontractor of SCA.

In spite of this nominal change, plaintiff's direct supervisor was an employee of SCA who directed her daily work assignments and who ultimately terminated her employment. SCA retained authority to terminate her employment unilaterally at all times pursuant to the Agreement. Even so, once plaintiff became a Nidus employee, Bovis had the right to terminate plaintiff's employment at any time; Bovis did, in fact, join her supervisor in terminating her employment. The woman who replaced her was hired by SCA rather than by Nidus. Furthermore, no one from Nidus interviewed plaintiff or made any decisions regarding her employment, and Nidus is not a party in the present case. It appears that SCA remained in control of plaintiff's employment at all times, even if it was not nominally her direct employer.

Courts construe Title VII's definition of "employer" liberally so that a direct employment relationship is not required, *Gryga v. Ganzman*, 991 F.Supp. 105, 108 (E.D.N.Y.1998), and the definition of "employer" is almost identical in Title VII and the ADEA. *Pemrick v. Stracher*, 67 F.Supp.2d 149, 169 n. 15 (E.D.N.Y. 1999). SCA did "control some aspect of [plaintiff's] compensation or terms, conditions, or privileges or employment," and was, therefore, an employer subject to the present ADEA claim. *Gryga*, 991 F.Supp. at 108 (citing *E.E.O.C. v. Sage Realty Corp.*, 507 F.Supp. 599, 611 (S.D.N.Y. 1981)).

The fact that SCA is plaintiff's employer does not preclude Bovis from being her employer also. *Gryga*, 991 F.Supp. at 108. Under the joint-employer doctrine, two entities may be characterized as a plaintiff's employer if plaintiff can demonstrate factors such as a "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir.1994); *see also Peltier v. Apple Health Care, Inc.*, 130 F.Supp.2d 285, 290 (D.Conn.2000) (company's role in firing decisions and in the administration of disciplinary procedures was sufficient to create

a question of fact as to the employment relationship and to defeat summary judgment). If SCA and Bovis are not joint employers and cannot be shown to have somehow colluded in the firing of plaintiff, then Bovis's motion for summary judgment should likely be granted because there is no evidence in the record that any Bovis employee was motivated to act in any manner based on plaintiff's age. If the two entities are joint employers, however, it may be reasonable for the jury to impute SCA's improper motives to Bovis as well.

A jury could conclude that the evidence "reasonably support[s] a verdict in plaintiff's favor" against one or both of the defendants. *James v. N.Y. Racing Assoc.*, 233 F.3d 149, 157 (2d Cir.2000).

## II. Procedural History

Plaintiff's employment was terminated in September 1996. In January 1997, she filed a charge of discrimination against the defendants with the Equal Employment Opportunity Commission (EEOC). On November 30, 2000, the EEOC mailed a right to sue letter to the plaintiff. On February 28, 2001, plaintiff filed a complaint against the New York School Construction Authority and Lehr, McGovern, Bovis/Nidus Corporation alleging age discrimination. Her complaint, filed exactly 90 days after the EEOC letter was mailed and fewer than 90 days after she received the letter, was timely. *Presser v. Key Food Stores Coop., Inc.*, No. 01 CV 8059, 2002 WL 31946714, at *2 (E.D.N.Y. Dec.3, 2002).

## III. Facts

The following statement of facts draws all reasonable inferences in favor of the plaintiff, as required when assessing a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

SCA and Bovis in association with Nidus entered into a Construction Management Agreement dated June 30, 1995. Pursuant to this agreement, SCA hired Bovis in association with Nidus to act as its agent in coordinating and managing the construction, and in executing a program to increase the participation of minority business enterprise and women business enterprise contractors and subcontractors. Construction Management Agreement. At the time plaintiff was terminated, her direct employer was Nidus, Farulla Dep. Tr. 49:13–51:20, who is not a party to the present action. The exact legal relationship between Bovis and Nidus is unclear. Bartolomei Dep. Tr. 56:18–57:20.

In 1991, plaintiff was hired by the SCA and continued to work in different positions for SCA until the termination that is the subject of this claim. Letters of recommendation—Exhibit E in Farulla's materials. She began working at the Petrides Center, the position she was in when she was terminated.

Her previous position was being phased out in 1996. Around that time, plaintiff's supervisor at her previous position, who was an employee of SCA, told a senior project officer for SCA that plaintiff was looking for a job. Sanguiliano Dep. Tr. 26:5–19. By "job," it is reasonable to believe that plaintiff was looking for a new position or a transfer within SCA. The senior project officer for SCA, who would become plaintiff's supervisor, passed the recommendation onto Bovis. Sanguiliano Dep. Tr. 26:5–28:22; Farulla Dep. Tr. 46:22–48:25; Bartolomei Dep. Tr. 10:6–10. In July 1996, a senior project manager at Bovis interviewed and approved plaintiff to be hired. Farulla Dep. Tr. 45:12–46:10; Bartolomei Dep. Tr. 22:19–23:18.

Plaintiff began working at the Petrides Center on August 5, 1996, under the direct supervision of an SCA employee. Sanguiliano Dep. Tr. 33:14–17; Farulla Dep. Tr. 62:10–16. Another woman was the hired and plaintiff trained her. This woman ultimately replaced plaintiff. She was approximately fifteen years younger than plaintiff and her resume suggests that, relative to plaintiff, she had less experience related to working as an administrative assistant in a construction office. Sanguiliano Dep. Tr. 89:9–13. The replacement was allowed to delegate work to an intern while plaintiff was not. Sanguiliano Dep. Tr. 96:17–97:4.

On September 23, 1996, plaintiff was fired. The decision was made by her supervisor, purportedly due to (1) plaintiff's difficulties in adjusting to the hours and (2) her failure to meet the requirements of the position at the Petrides Center. Sanguiliano Dep. Tr. 42:9–21; September 23, 1996 Bartolomei Mem.; September 24, 1996 Sanguiliano Mem.; Bartolomei Dep. Tr. 31:21–25. The senior project manager at Bovis agreed to fire her. Termination Mem. 9/23/96—Exhibit G in Farulla's materials. At the deposition of plaintiff's supervisor, however, he acknowledged that she did not have trouble adjusting to the hours at the Petrides Center. Sanguiliano Dep. Tr. 40:5–41:10.

Under the provisions of the Construction Management Agreement between Bovis and SCA, Bovis retained the right to approve all personnel decisions regarding the hiring and firing of Nidus employees assigned to SCA projects, and SCA could recommend employees or could reject employees or could dismiss employees. Bartolomei Dep. Tr. 19:11–20:8; Sanguiliano Dep. Tr. 21:4–23:15; Bovis/Nidus Agreement, Paragraph 16; Construction Management Agreement, Paragraph 3.6. There are procedures within SCA for terminating people and putting people on probation before firing them. Sanguiliano Dep. Tr. 103:3–8. These procedures were not deployed in the present case. Plaintiff's supervisor did not, apply those procedures because, it is argued, plaintiff was employed by Nidus and Bovis rather than by SCA. Sanguiliano Dep. Tr. 102:2–103:18.

Plaintiff's supervisor was 51 at the time he supervised plaintiff. Sanguiliano Dep. Tr. 6:9–10. The senior project manager at Bovis was 59 at the time he agreed to fire plaintiff. Bartolomei Dep. Tr. 6:8–9. Plaintiff was 62 during the forty-nine days of her employment at the Petrides Center Farulla Dep. Tr. 16:12–13.

## IV. Law

### A. Standards for Summary Judgment

Summary judgment shall be granted if the information before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is evidence enough to preserve a genuine issue as to any material fact, the court should "review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097. The moving party has the burden of demonstrating that there are no genuine issues as to material facts. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994); *Tarshis v. Riese Org.,* 195 F.Supp.2d 518, 523 (S.D.N.Y.2002). Even though the moving party bears the burden, the plaintiff must produce evidence instead of relying upon speculation; a plaintiff cannot defeat summary judgment "simply because the determinative issue focuses upon the

defendant's state of mind." *Tarshis,* 195 F.Supp.2d at 524 (citations omitted). If the record as a whole "could lead a reasonable trier of fact to find in favor of the non-movant," then a genuine issue of material fact exists. *Strohmeyer v. Int'l Bhd. of Painters & Allied Trades,* 989 F.Supp. 455, 458 (W.D.N.Y.1997); *see also James,* 233 F.3d at 157 (holding that "the test for summary judgment is whether the evidence can reasonably support a verdict in plaintiff's favor").

## B. Discrimination Claims under the ADEA

It is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Under the ADEA, the age of the plaintiff "must have 'actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097 (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Age must be shown to have been a "motivating factor" for the discharge, but it need not have been only or the primary reason for the discharge. *Owen v. Thermatool Corp.,* 155 F.3d 137, 139 (2d Cir.1998).

### 1. Burden–Shifting Framework

ADEA claims are analyzed under a burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Jetter v. Knothe Corp.,* 324 F.3d 73, 75 (2d Cir. 2003). Under this framework, the evidentiary burden shifts between the parties, but the ultimate burden of proving discrimination remains with the plaintiff. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

First, the plaintiff must prove a prima facie case by a preponderance of the evidence. *Jetter,* 324 F.3d at 75. A prima facie case requires a showing (1) that plaintiff is a member of the protected class, (2) that plaintiff was qualified for his or her job, (3) that plaintiff was discharged by his or her employer, and (4) that the circumstances surrounding his or her discharge from employment give rise to an inference of discrimination. *Dawkins v. Witco Corp.,* 103 F.Supp.2d. 688, 696 (S.D.N.Y.2000). Second, if a plaintiff successfully proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for firing the plaintiff. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Jetter,* 324 F.3d at 75. The burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Last, if the defendant meets its burden of production, the *McDonnell Douglas* framework disappears and the plaintiff is left to prove his or her case. *Reeves,* 530 U.S. at 142–43, 120 S.Ct. 2097. To survive summary judgment after defendant meets its burden of production, plaintiff must provide evidence showing that defendant's stated "non-discriminatory reason" is false. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097.

### 2. Genuine Issue as to a Material Fact

To defeat summary judgment a plaintiff must demonstrate that there is a genuine issue as to a fact relevant to whether or not the defendant discriminated against the plaintiff based on his or her age. Fed.R.Civ.P. 56(c); *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097. The plaintiff may show that the reasons offered by the

defendant are a pretext for the true discriminatory reasons. *Jetter,* 324 F.3d at 75. With respect to a Rule 50 motion for judgment as a matter of law, the Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. This is because "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 148, 120 S.Ct. 2097 (emphasis in original). Courts have held that the same standards apply to Rule 56 motions for summary judgment. *James,* 233 F.3d at 155–56. When the plaintiff has made a prima facie case and has provided evidence that the employer's explanation was false, the court must determine "whether the evidence can reasonably support a verdict in plaintiff's favor" in order to determine how to rule on the motion for summary judgment. *James,* 233 F.3d at 157. This determination is based on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097; *see also James,* 233 F.3d at 156 (applying the factors set forth in *Reeves* to a summary judgment determination).

## V. Application of Law to Facts

■ Plaintiff has successfully made out a prima facie case of age discrimination. She was 62 when she was fired and was therefore a member of the protected class. 29 U.S.C. § 631; Farulla Dep. Tr. 16:12–13. She has also provided evidence showing that she was qualified for the position. The evidence, which included her resume and five letters of recommendation from colleagues and supervisors, were sufficient to demonstrate her qualifications for purposes of a prima facie claim. *Owens v. New York City Housing Auth.,* 934 F.2d 405, 409 (2d Cir.1991) (holding that *"McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim" (emphasis in original)). There is also no question that she was discharged by her employer.

Finally, plaintiff's evidence might support the conclusion that because a younger employee replaced her, she was discharged under circumstances which give rise to an inference of age discrimination. *Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 212 (S.D.N.Y.1992) (evidence demonstrating that a younger employee replaced the plaintiff is one of the ways that plaintiff can meet the prima facie requirement to show circumstances giving rise to an inference of discrimination). Although there is no documentation of plaintiff's replacement's actual age, the defendants do not dispute that the replacement is approximately fifteen years younger than plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (plaintiff does not need to be replaced by someone outside protected class to make a case for age discrimination), *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001). Having made out her prima facie case, the burden of production now shifts to the defendants to demonstrate a legitimate nondiscriminatory reason to dismiss the plaintiff. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097.

■ Defendant's argument in its motion for summary judgment that the plaintiff was fired due to her performance is not conclusive. At the time that plaintiff was discharged, the reasons provided for ter-

mination were her difficulties in adjusting to the hours and requirements of the position at the Petrides Center. Sept. 23, 1996 Bart. Mem.; Sept. 24, 1996 Sang. Mem.; Bart. Dep. Tr. 31:21–25. In addition, her supervisor testified that plaintiff was unable to handle the duties and responsibilities of the job, claiming that she was erratic, unfocused, unprofessional, and not equipped to take on the position. Sang. Dep. Tr. 33:20–34:3. He testified that her computer skills, ability to take charge, and ability to organize material and to be proactive were non-existent, and that she was indecisive. Sang. Dep. Tr. 34:4–35:15. He further testified that she socialized excessively while on the job, Sang. Dep. Tr. 37:7–37:24, did not know how to do things around the office, Sang. Dep. Tr. 37:25–38:21, and delayed doing work because she did not know how to do it. Sang. Dep. Tr. 38:22–40:4. By providing this evidence, defendants met their burden of production because these reasons, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 559 (2d Cir.1997) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507, 113 S.Ct. 2742 (internal quotation marks and emphasis omitted)). The burden then shifted back to the plaintiff to provide evidence that the defendants' stated reasons for discharge are false. *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

■ In response to defendants' explanations, plaintiff satisfactorily argues that at least some of the reasons provided by SCA may be pretextual and that the animating reason for her discharge was her age. Plaintiff denies the claim that she had difficulty in adjusting to the hours at Petrides. She states that she extended her hours (which were initially 8:00 to 4:00) to 8:00 to 4:30 without complaint. To sup-

port this statement, she provides her time sheet—which does not show the change in hours, but does show that she consistently worked eight hours a day—and she notes the inconsistencies in defendants' depositions. In his deposition, plaintiff's supervisor states that, in fact, there were no problems with plaintiff specifically due to her hours, rather that there were general problems with the hours from Nidus, Bovis, and SCA, and that those were resolved. Sang. Dep. Tr. 40: 5–41:10. From this information, a jury could find that the allegation that plaintiff had difficulty in adjusting to the hours at Petrides was pretextual.

Plaintiff also plausibly might prove that she was able to handle the duties and responsibilities of the job. She emphasizes that the contrary allegations were never made in the documents drafted at the time of her termination. She also provides letters of recommendation from her former supervisors to demonstrate her skills and capabilities. Her supervisor's statement in his deposition that the woman who replaced plaintiff did not have computer skills when she was hired, Sang. Dep. Tr. 96:14–16, could be found to undermine his statement that plaintiff was fired in part because of her non-existent computer skills. Sang. Dep. Tr. 34:4–35:15. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir.), *cert. denied*, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) (noting that evidence that an employee was replaced shortly after discharge undermines explanation of downsizing or reduction-in-force). In addition to this, plaintiff's supervisor testified that plaintiff's phone skills were fine. Sang. Dep. Tr. 42:6–8, and that plaintiff's resume indicated that she was more experienced as an administrative assistant to work in a construction office than her replacement. Sang. Dep. Tr. 89:9–13. Finally, plaintiff states—though without documentary support—that her supervisor expressed his

satisfaction with her job performance when he said that the new filing system she implemented was the most effective one he had encountered.

In addition to specific responses to the defendants' stated reasons for terminating her, plaintiff also proffers several reasons for her belief that age was the motivating factor in her termination. She states that her supervisor had told her before hiring the woman who replaced plaintiff, "Angela, I wanted to tell you we're hiring a young woman." Farulla Affidavit paragraph 11. In addition, plaintiff argues that her supervisor discriminated against her by treating her replacement differently—specifically, by denying plaintiff the services of the student intern while allowing her replacement to delegate tasks to him. In his deposition, plaintiff's supervisor responded to that allegation by saying that he did not want the intern to do plaintiff's work. Sang. Dep. Tr. 55:4–21. He acknowledged that he told the intern not to work with plaintiff and knew that the intern was working with plaintiff's replacement, Sang. Dep. Tr. 96:17–97:4, and said, "if I wanted plaintiff's replacement to delegate something to the intern, it was going—that's the way it's going to be, you know. I'm in charge of the office." Sang. Dep. Tr. 56: 4–7.

 Defendants make much of the fact that the two actors who hired plaintiff in August were the same actors who fired her in September. Courts may consider the "same actor" rationale when looking at employment discrimination cases. *Grady*, 130 F.3d at 560 (holding that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the desire to hire. This is especially so when the firing has occurred only a short time after the hiring"). Although defendants cite a legitimate stan-

dard, the standard is not appropriate in the instant case. In the present case, the facts suggest that plaintiff's hiring at the Petrides Center was more like a change of positions within SCA than like a typical individual applying for a job. In fact, the circumstances in this case could weigh against the defendant if the trier of fact found that defendants used the ambiguous relationship between SCA, Bovis, and Nidus to transfer plaintiff so that she could be fired without the procedural requirements mandated by SCA. *Jetter*, 324 F.3d at 75 (distinguishing *Grady* because the "same actor" rationale is usually applied in circumstances where the employer did not have a collateral incentive to hire a particular candidate unlike in cases where the employer had to hire the plaintiff to acquire plaintiff's company).

## VI Conclusion

A reasonable jury could conclude that plaintiff was the victim of age discrimination, particularly because "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 148–49, 120 S.Ct. 2097; *see also James*, 233 F.3d at 156 (applying the factors set forth in *Reeves* to a summary judgment determination). Defendants' motions for summary judgment is denied.

The policy issue of whether an employment agency may avoid liability if it merely follows the orders of the discriminating employer which actually was using the services of the complaining employee seems to be unresolved in this Circuit. An interlocutory appeal is unwise. The facts should be developed before the case is presented on appeal.

SO ORDERED.